FILED - KZ
November 19, 2015 9:41 AM
CLERK OF CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
bd Scanned by [illegible] 11-19

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

(MGH)

BECKY ~~Pinkston~~-PINKSTON-POLING, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

ADVIA CREDIT UNION,

Defendants.

Civil No.: 1:15-cv-1208
Gordon J. Quist
U.S. District Judge

CLASS ACTION - COMPLAINT

DEMAND FOR JURY TRIAL

## COMPLAINT

(MGH)

Plaintiff Becky ~~Pinkston~~-Pinkston-Poling ("Plaintiff"), by her attorneys, hereby brings this class and representative action against Advia Credit Union ("Advia" or "Defendant"). All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1. This is a class and representative action brought by Plaintiff to assert claims in her own right, in her capacity as the class representative of all others similarly situated. This class action seeks monetary damages, restitution, punitive damages, and injunctive relief against Defendant Advia arising from Advia's breach of its contracts with consumers in its implementation of an overdraft fee program. Specifically, Plaintiff asserts that Advia charged overdraft fees for transactions for which there was

money in the checking account to cover the transactions, thereby breaching the express terms of its consumer contract. Plaintiff also alleges that because it provided inaccurate and misleading overdraft information to its customers, under the Electronic Funds Transfer Act, 12 C.F.R. § 1005, Advia was not authorized to assess overdraft fees to consumers for debit card and non-recurring debit card charges. However, Advia did charge its customers overdraft fees for ATM and debit card charges.

## PARTIES

2. Plaintiff is a resident of Kalamazoo, Michigan, and was as a member of Advia at all times relevant to the class action allegations.

3. Based on information and belief, Defendant Advia is a state chartered credit union with its headquarters located in Kalamazoo, Michigan.

4. Whenever in the complaint reference is made to any act, deed, or conduct of a defendant corporation, the allegation means the defendant corporation engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the defendant corporation's ordinary business and affairs.

5. As to the conduct alleged herein each act was authorized ratified or directed by Defendant's officers, directors, or managing agents.

## VENUE AND JURISDICTION

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because: 1) the claims of plaintiffs aggregated together exceed $5,000,000, and 2) some putative class members are residents of different states than the Defendant. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of and does substantial business in Kalamazoo, Michigan, which is in this

district.

## FACTUAL ALLEGATIONS

### A. Advia's Unlawful Overdraft Program

7. Advia is a Michigan based credit union with approximately $1 billion in assets that provides banking services to over 100,000 members through 24 branches in Michigan, Wisconsin, and Illinois. One of the services offered by Advia to consumer banking customers is a checking account. One of the benefits Advia offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM machines, schedule ACH (Automated Clearing House transactions) such as certain recurring payments, and other type of transaction items that debit from the checking account. In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), Advia assesses overdraft fees to its customers when it determines that the customer account is overdrawn.

8. Credit Unions, like banks, have increasingly turned to overdraft fees as a highly lucrative profit center. An FDIC report estimated that overdraft fees represent 74% of the total services charges that are imposed on deposit accounts in the United States. According to the June 11, 2013 report entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14).

9. The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake. (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices", at p. 4.) More than 60% of the transactions that resulted in a large overdraft fee were for

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

less than $50. (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p.8). More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id.*, at p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id.*, at p. 10).

10. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and nonwhite account holders are among those who were more likely to be assessed overdraft fees. (*Id.*, at p. 1.) A 25 year old is 133% more likely to pay an overdraft penalty fee than a 65 year old. (*Id.*, at p. 3.) More than 50% of the customers assessed overdraft fees earned under $40,000 per year. (*Id.*, at p. 4.) Nonwhites are 83% more likely to pay an overdraft fee than whites. (*Id.*, at p. 3.)

11. In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees through methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues have occurred over the past few years. The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars.

12. Furthermore, the federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies. In 2010, the Federal Reserve Board enacted a regulation permitting financial institutions to charge overdraft fees on ATM and one-time debit card charges only if the institution first obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 ("Opt In Rule").

13. To qualify as affirmative consent, the opt-in notice/agreement must include, but is not

limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;
- The opt-in consent must be obtained separately from other consents and acknowledgements;
- The consent cannot serve any purpose other than opting into the overdraft program;
- The consent cannot be a pre-selected checked box;
- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution did not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt-in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

14. At all relevant times, Advia has had an overdraft program (sometimes referred to as "Courtesy Pay") in place for assessing overdraft fees on certain transactions which is contrary to the express terms of its contracts with members; is contrary to how Advia represents its overdraft program to its members; and is contrary to what consumers would expect as to when they would be assessed overdraft fees. Advia contracts with its members that it is entitled to assess an overdraft fee when Advia pays an item (an item is a check, debit card withdrawal, ATM or ACH) when it is presented without sufficient funds to pay the item. ("Payment Order of Items" section of its Member Account Agreement & Truth in Savings Disclosure ("Account Agreement"), p. 2 attached hereto as Exhibit 1.) In the "Overdraft Courtesy Pay Plan" section of the Account Agreement, Advia contracts that an overdraft occurs when "any item [is] presented for payment if your account does not have sufficient funds." (*Id.* at p.3.). Based on information and belief, the opt-in contract has similar language that overdraft fees

would only be assessed when there was insufficient fund or money in the account to cover the transaction.

15. Advia's contractual promises to only assess overdraft fees when there is not enough money in the account to pay the item (insufficient funds), was also provided to customers in other disclosures and marketing materials it provided to customers.

15. However, contrary to the contracts and other marketing materials that Advia will only charge overdraft fees when there is not enough money in the checking account to pay the transaction, Advia's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account or a negative balance, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (available balance) rather than the actual balance. The available balance is the actual balance minus anticipated debits in the future (that may or may not occur) and deposits that have not yet cleared pursuant to its funds availability policy. The use of an internal available balance rather than the actual balance to determine whether a transaction is overdrawn and subject to an overdraft fee is directly contrary to the language in the contracts. The result is that Advia improperly charges members overdraft fees in situations when there is money in the account to pay the item(s).

16. This practice is in breach of Advia's contracts with its members. Further, the practice of charging overdraft fees even when there are sufficient money/funds in the account is inconsistent with how Advia describes the circumstances of when it assesses overdraft fees in other customer materials. Further, Advia has failed to inform customers of the conditions under which overdraft fees will be assessed in both the Account Agreement and other consumer materials.

17. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of

the contracts.

18. Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

**B. Unlawful Overdraft Fees Assessed to Plaintiff Becky Pinkston-Poling**

19. Plaintiff was harmed by the practice of charging overdraft fees when there was money in the account to cover the transaction. Plaintiff entered into a contract with Advia, where Advia contracted to charge overdraft fees only if there was not money to cover the transaction. Advia breached these agreements, and in breaching the Opt-In Agreement, violated Regulation E. It will be necessary to obtain Defendant's records to determine each occasion when Advia engaged in this practice, and the resulting damage to Plaintiff from the practice. However, to give just one example, on June 27, 2015, Plaintiff had a balance of $30.48, before a $7.00 debit card transaction was posted to her account, leaving her with a balance of $23.48. Despite the fact that Plaintiff had sufficient funds and money to cover the transaction, she was charged an overdraft fee of $32 on the $7.00 transaction. It is believed that a complete review of Plaintiff's and Advia's records will show multiple instances of Advia improperly charging Plaintiff overdraft fees for transaction items despite Plaintiff having money in her account to cover the transaction.

20. Furthermore, the assessment and unilateral taking of improper overdraft fees, further reduces the balance and amount of funds in the account, resulting in and aggressively causing subsequent, otherwise non-overdrafting transactions to be subsequently treated as transactions for which Advia assesses further overdraft fees. A complete evaluation of Advia's records is necessary to determine the full extent of Plaintiff's harm from this practice.

**CLASS ACTION ALLEGATIONS**

21. Plaintiff brings this case, and each of her respective causes of action, as a class action

pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of the following classes:

22. The "Class" is composed of two potential classes.

**The Positive Balance Class:**

**All US residents who have or have had accounts with Advia who incurred overdraft fees for transactions when there was money in the checking account to cover the transactions in the six years preceding the filing of this Complaint.**

**The Regulation E Class:**

**All US residents who have or have had accounts with Advia who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of an opt-in agreement which provided inaccurate or misleading information on Advia's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transaction since August 15, 2010.**

23. Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or director of Defendant, this Court and any employees assigned to work on the case, and all employees of the law firms representing Plaintiff and the Class.

24. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

25. This action has been brought and may be properly maintained on behalf of each of the Class proposed herein under Federal Rule of Civil Procedure 23.

26. **<u>Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))</u>** – The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is unknown to Plaintiff at this time and can be determined only by

appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

27. Upon information and belief, Defendant retains the databases, or other documentation, of transactions and account enrollment which will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

28. **Commonality (Federal Rule of Civil Procedure 23(a)(2)** – The action involves common questions of law and fact. Those common questions of law or fact predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

a. Whether Defendant had standardized Agreements during the class period that were provided to customers;

b. Whether Defendant breached that customer agreements by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had money to cover the transactions;

c. Whether Defendant's conduct violated state consumer protection laws;

d. Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

29. **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as the relevant agreements and the challenged overdraft fee practice that was applied to customers' accounts are

uniform for all Class members.

30. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Plaintiff and her counsel intend to prosecute this action vigorously.

31. **Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** – The common questions of law or fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members. Further, the class action is superior to all other available methods for the fair and efficient adjudication of this case or controversy. Because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct. Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed. The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to

suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

32. Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

33. This action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

i. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

ii. Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to

other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i. The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

ii. The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

iii. The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

iv. The difficulties likely to be encountered in the management of a Class Action.

**FIRST CAUSE OF ACTION**

**(For Breach of Contract)**

34. The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

35. Plaintiff and each of the Class members entered into contracts covering the subject of overdraft transactions, which was drafted by and is binding on Defendant. In addition, certain of the Class members entered into an Opt-In Agreement with Defendant.

36. The contracts authorize Defendant to assess overdraft fees only for transactions for which there was not money in the account to pay the item.

37. In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not

merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

38. The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

39. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

40. Defendant breached the expressed terms of the contracts by, inter alia, assessing overdraft fees when there was money in the account to pay the item.

41. Alternatively, Defendant breached thc implied covenant of good faith and fair dealing based on this practice.

42. As a proximate result of Defendant's breach of the contracts, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## SECOND CAUSE OF ACTION

### (Violation of Michigan Consumer Protection Act)

43. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

44. At all times relevant to this suit, Advia was conducting trade or commerce as defined under Michigan Complied Laws ("MCL") 445.902(1)(g), which is also known as the Michigan Consumer Protection Act.

45. Advia engaged in unfair and deceptive practices by failing to provide its customers the benefit of the contracts and representing that overdraft fees would not be charged when there is enough money in the account to cover the transaction, then charging overdraft fees in that circumstance.

46. Based upon all of these allegations, Defendants violated MCL § 445.903(c), (o) and (s), as well as other sections of MCL § 445.903 to be developed during the course of discovery.

47. As a direct and proximate result of Advia's representations, Plaintiff and the Class members suffered damages because they enrolled in the overdraft program when they otherwise would not have, and incurred overdraft fees that they otherwise would not have incurred.

48. Plaintiff and the Class seek actual damages and attorney fees and costs, pursuant to Mich. Comp. Laws § 445.911, as well as equitable relief, restitution and statutory penalties, pursuant to §§ 445.905, 445.910, and 445.905, respectively, as set forth in the Prayer below.

**<u>THIRD CAUSE OF ACTION</u>**

**(For Unjust Enrichment/Restitution)**

49. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

50. Defendant received millions of dollars as a result of the wrongful and unjust misconduct alleged above.

51. As a result, Plaintiff and the Class members have conferred a benefit on Defendant. Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred. Defendant will be unjustly enriched should it be allowed to retain such funds. Therefore, Plaintiff and

the Class members seek relief as set forth in the Prayer below.

**FOURTH CAUSE OF ACTION**

**(For Money Had and Received)**

52. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

53. Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

54. As a result, Defendant has in its possession money which in equity belongs to Plaintiff and the Class members which should be refunded to Plaintiff and the Class members. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

**FIFTH CAUSE OF ACTION**

**(Negligence)**

55. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

56. As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. Defendant had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment though its own wrongful acts. Specifically, Defendant owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there were sufficient funds in the account.

57. Defendant breached this duty by unreasonably mishandling the accounts of Plaintiff and the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been charged.

58. As a proximate result of Defendant's negligence, Plaintiff and each class member has been damaged in an amount to be proven at trial. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

**SIXTH CAUSE OF ACTION**

**(Violation of Electronic Funds Transfer Act)**

59. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

60. Because of Defendant's misrepresentations and material omissions as to the operation of the overdraft program, any consent that Defendant obtained for class members participation in the program was fraudulently induced.

61. Because the opt-in form was breached and/or consent to participation was fraudulently induced, Defendant failed to comply with 12 C.F.R. § 1005.17 which requires affirmative consent.

62. Because of Defendant's failure to comply with 12 C.F.R. § 1005.7 it is liable for actual and statutory damages, as well as attorney fees and costs of suit pursuant to 12 U.S.C. § 1693m.

**PRAYER**

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory damages on all applicable claims and in an amount to be proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4. For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there are sufficient funds/ money in the account, and providing

accurate and reliable information regarding the overdraft practice;

5. For costs;

6. For interest;

7. For attorneys' fees as permitted by statute, under the common fund doctrine, other applicable law, and the customer account agreement; and

8. For such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class members demand a trial by jury on all issues so triable.

DATED: November 19, 2015 BY: ______________________________

Philip J. Goodman, Bar #P14168
pgoodman1@aol.com
Of Counsel
Michael B. Serling, Bar #P20225
mserlinglaw@aol.com
Denise J. Grass, Bar #P69913
dgrass@serlinglaw.com
**Law Offices of Michael B. Serling, P.C.**
280 N. Old Woodward Ave, Suite 406
Birmingham, MI 48009
Telephone: (248) 647-6966
Facsimile: (247) 647-8481

Richard D. McCune, CA State Bar #132124*
rdm@mccunewright.com
**MCCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Taras Kick, CA State Bar #143379*
taras@kicklawfirm.com
**THE KICK LAW FIRM, APC**
201 Wilshire Boulevard
Santa Monica, California 90401
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

**Pro Hac Vice* applications to be submitted

*Attorneys for Plaintiff Becky Pinkston-Poling and the Putative Class*