UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BECKY PINKSTON-POLING, individually,
and on behalf of all others similarly situated,

    Plaintiff,

vs.

ADVIA CREDIT UNION,

    Defendant.

Case No. 1:15-cv-1208
Hon. Gordon J. Quist

**ORAL ARGUMENT REQUESTED**

---

### DEFENDANT ADVIA CREDIT UNION'S
### MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Advia Credit Union, for the reasons more particularly stated in the accompanying Brief in Support, moves to dismiss all of Plaintiff's claims on the grounds that the Complaint fails to state a claim upon which relief can be granted.

    Respectfully submitted,

    HOWARD & HOWARD ATTORNEYS PLLC

Dated: December 21, 2015    By: _/s/ Brandon J. Wilson_
                      Brandon J. Wilson (P73042)
              Attorneys for Defendant Advia Credit Union
              450 West Fourth Street
              Royal Oak, MI 48067
              (248) 645-1483
              (248) 645-1568 Fax
              bjw@h2law.com

**BRIEF IN SUPPORT OF DEFENDANT ADVIA CREDIT UNION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF ISSUES PRESENTED ...................................................................... vi

I.      BACKGROUND ................................................................................................... 1

II.     ARGUMENT .......................................................................................................... 2

        A.      Legal Standard ........................................................................................... 2

        B.      The Court Should Dismiss Plaintiff's Claim For Breach Of Contract
                Because Advia Complied With The Terms Of The Contract ................................. 4

        C.      Plaintiff's Claim for Violation of the Michigan Consumer Protection Act
                Should Be Dismissed ................................................................................... 8

        D.      Plaintiff's Third Claim For Unjust Enrichment Should be Dismissed .................. 9

                1.      *The Claim For Unjust Enrichment is Barred As a Matter of Law
                        Because A Written Contract Exists Between The Parties* ........................... 9

                2.      *Advia Was Not Unjustly Enriched* ............................................................. 10

        E.      The Court Should Dismiss Plaintiff's Fourth Claim For Money Had And
                Received Because It Is Merely A Repackaging Of All The Other Causes
                Of Action ................................................................................................... 11

        F.      Plaintiff's Fifth Claim for Negligence Should be Dismissed with Prejudice ....... 12

                1.      *The Economic Loss Doctrine is an Absolute Bar to Plaintiff's
                        Claim for Negligence* ............................................................................... 12

                2.      *Plaintiff Has Not Pled a Legally Recognized Duty of Care* ...................... 16

        G.      Plaintiff's Sixth Claim for Violation of the Electronic Fund Transfer Act
                Should Be Dismissed Because Advia's Contract, Policies and Conduct
                Comply With Federal Law ............................................................................ 18

III.    CONCLUSION ..................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*AFT Michigan v. Michigan*,
    303 Mich. App. 651, 846 N.W.2d 583 *appeal granted*, 495 Mich. 1002, 846 N.W.2d 544
    (2014) *and aff'd sub nom. AFT Michigan v. State of Michigan*, 497 Mich. 197, 866 N.W.2d
    782 (2015) .................................................................................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 3, 9, 11, 20

*Bailey v. Schaaf*,
    494 Mich. 595, 835 N.W.2d 413 (2013) .............................................................................. 17

*Bassett v. Nat'l Collegiate Athletic Assoc.*,
    528 F.3d 426 (6th Cir. 2008) ................................................................................................. 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ............................. 3, 9, 11

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir.1994) ..................................................................................................... 1

*Brewster v. Martin Marietta Aluminum Sales, Inc.*,
    145 Mich. App. 641; 378 N.W.2d 558 (1985) .................................................................... 13

*Calloway v. City of Reno*,
    116 Nev. 250, 993 P.2d 1259 (2000) ................................................................................... 16

*Cara's Notions, Inc. v. Hallmark Cards, Inc.*,
    140 F.3d 566 (4th Cir. 1998) ............................................................................................... 17

*Casgar v. Citizens & Southern Nat. Bank*,
    372 S.E.2d 815 (Ga. Ct. App. 1988) ................................................................................... 17

*Clark v. Rowe*,
    701 N.E.2d 624 (Mass. 1998) .............................................................................................. 17

*Comcast of Or. II, Inc., v. City of Eugene*,
    209 P.3d 800 (Or. 2009) ...................................................................................................... 12

*CSX Transportation, Inc. v. Meserole Street Recycling*,
    618 F. Supp. 2d 753 (W.D. Mich. 2009) ............................................................................ 15

*Diem v. Sallie Mae Home Loans, Inc.*,
    307 Mich. App. 204, 859 N.W.2d 238 (2014) .................................................................... 16

*Fischer & Mandell LLP v. Citibank, N.A.*,

2010 WL 2484205 (S.D.N.Y. 2010) ........................................................................... 8

*Forrest v. Universal Savings Bank*,
507 F.3d 540 (7th Cir. 2007) ................................................................................ 4

*Hart v. Ludwig*,
347 Mich. 559; 79 N.W.2d 895 (1956) ................................................................. 13

*Hassler v. Sovereign Bank*,
374 Fed. Appx. 341 (3rd Cir. 2010) ................................................................. 7, 20

*Herrman v. Gleason*,
126 F.2d 936 (6th Cir. 1942) ............................................................................... 11

*Hill v. Sears, Roebuck & Co.*,
492 Mich. 651, 822 N.W.2d 190 (2012) .......................................................... 17, 20

*Huron Tool & Engineering Co v. Precision Consulting*,
209 Mich. App. 365, 532 N.W.2d 541 (1995) ........................................... 13, 14, 15

*In re Brown*,
342 F.3d 620 (6th Cir. 2003) ............................................................................ 4, 7

*In re Rankin*,
2006 BL 96852 (Bankr. E.D. Mich. Sept. 11, 2006) ............................................. 11

*Jones v. City of Carlisle*,
3 F.3d 945 (6th Cir. 1993) ..................................................................................... 4

*Kandel v. Brother Int'l Corp.*,
2009 WL 9100406 (C.D. Cal. 2009) ..................................................................... 11

*Klein v. HP Pelzer Auto. Sys., Inc.*,
306 Mich. App. 67, 854 N.W.2d 521 (2014) *appeal denied*, 497 Mich. 959, 858 N.W.2d 465
(2015) .................................................................................................................. 5

*Lesser v. Strubbe*,
171 A.2d 114 (N.J. Super. 1961) ......................................................................... 17

*Miller v. United States Steel Corp.*,
902 F.2d 573 (7th Cir. 1990) ............................................................................... 14

*Morris Pumps v. Centerline Piping, Inc.*,
273 Mich. App. 187; 729 N.W.2d 898 (2006) ........................................... 10, 11, 12

*Neibarger v. Universal Cooperatives, Inc.*,
439 Mich 512; 486 N.W.2d 612 (1992) ........................................................... 13, 14

*Quest Diagnostics, Inc. v. MCI Worldcom, Inc.*,

254 Mich. App. 372, 656 N.W.2d 858 (2002) ....................................................... 13

*Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*,
454 Mich. 65, 559 N.W.2d 647 (1997) .................................................. 14, 15

*Roberts v. Salmi*,
308 Mich. App. 605, 866 N.W.2d 460 (2014),
*appeal granted*, 868 N.W.2d 911 (Mich. 2015) .................................. 17

*Rodic v. Thistledown Racing Club, Inc.*,
615 F.2d 736 (6th Cir.1980) ................................................................... 1

*Sagebrush Dev., Inc. v. Moehrke*,
604 P.2d 198 (Wyo. 1979)....................................................................... 4

*Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*,
2011 WL 1193647 (E.D. Mich. 2011) ................................................... 11

*Shapiro v. Am.'s Credit Union*,
2013 WL 5373269 (W.D. Wash. Sept. 25, 2013)................................. 8, 19

*Sky Way, Inc., v. Jaco Aircraft, Inc.*,
1996 WL 33364410 (Unpublished, Mich. App. May 7, 1996) .............. 15

*Song v. City of Elyria*,
985 F.2d 840 (6th Cir. 1993) ................................................................... 1

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .............................................................. 3, 20

*VRG Corp. v. GKN Realty Corp.*,
135 N.J. 539, 641 A.2d 519 (1994) ....................................................... 10

*Webb v. Republic Bank & Trust Co.*,
2013 WL 5447709 (W.D. Ky. 2013) ................................................... 8, 20

*Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*,
295 Mich. App. 99, 812 N.W.2d 799, 815 (2011)................................... 7

**Statutes**

12 C.F.R. § 1005.17 ........................................................................... 18, 19

12 C.F.R. § 1005.17(d) ............................................................................ 18

12 C.F.R. § 229.15 ................................................................................... 19

MCL § 440.4303(2) ............................................................................... 6, 7

MCL § 445.904(1)(a) .................................................................................................... 8

MCL § 490.101 ............................................................................................................. 9

MCL § 550.601 ............................................................................................................. 9

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 n. 23 (3d ed.1990) ...................................................................................................... 1

**Court Rules**

Fed. R. Civ. P. 12(b) ................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2, 3

# STATEMENT OF ISSUES PRESENTED

I.     DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT?

    Plaintiff says:    No.

    Advia says:    Yes.

II.     DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT?

    Plaintiff says:    No.

    Advia says:    Yes.

III.     DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT?

    Plaintiff says:    No.

    Advia says:    Yes.

IV.     DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR MONEY HAD AND RECEIVED?

    Plaintiff says:    No.

    Advia says:    Yes.

V.     DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR NEGLIGENCE?

    Plaintiff says:    No.

    Advia says:    Yes.

VI.     DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT?

    Plaintiff says:    No.

    Advia says:    Yes.

# I.    BACKGROUND

This putative class action suit arises out of Plaintiff Becky Pinkston-Polig's failure to keep enough funds in her checking account to cover the items she presented for payment against her account.  Plaintiff opened a checking account with Defendant Advia Credit Union ("Advia").  (Complaint, ECF 1 at ¶ 3).[1]  Pursuant to the term of the Member Account Agreement & Truth in Savings Disclosure ("Contract" and attached as Exhibit 1) Plaintiff agreed to keep sufficient funds in the account to cover all items presented to Advia for payment.  In the event she failed to have sufficient funds in her account, Plaintiff agreed that Advia could, but was not obligated to, pay the overdraft and charge her a fee for the overdraft.  In the alternative, Advia could have returned items due to Non-Sufficient Funds ("NSF").  Under either scenario, Plaintiff agreed she would be charged for presenting items for payment that exceeded the balance of her account.

Plaintiff claims Advia breached the Contract and that Advia is unfairly taking advantage of its customers through its overdraft program as a source of income.  Plaintiff does not specify which portion of the Contract Advia breached, nor does she specify how much money she had in her account when she was allegedly charged improper overdraft fees.  Plaintiff also alleges studies show banks have dramatically increased profits with overdraft agreements.  Plaintiff would like to use those studies cited in the Complaint to tar Advia with the claim that it is using the overdraft charges to maximize its profits.  Plaintiff fails to disclose or acknowledge the

---

[1]  Federal Rule of Civil Procedure 12(b) does not require a court to convert a motion to dismiss, despite a party's submission of extrinsic evidence, where one or more of the following exists: (1) the evidence consists of proceedings of which the court is permitted to take judicial notice, *see Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.1980); (2) the documents' contents are alleged in the plaintiff's complaint, and their authenticity is unchallenged, *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); and (3) the defendant's attachment of extrinsic material to its motion to dismiss does not rebut, challenge, or contradict anything in the plaintiff's complaint, *see Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir.1993); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 n. 23 (3d ed.1990).

distinction between a bank and a credit union. While banks are for profit enterprises, credit unions are not. Credit unions are nonprofit cooperatives, owned by their members, that return earnings to members through lower rates on loans, higher rates on deposits and lower fees. Advia is a Michigan-chartered credit union. (ECF 1 at ¶ 2). Like all other credit unions, Advia is not run for profit; it is run for the benefit of its members. Advia therefore is not incentivized to unfairly charge Plaintiff or any of its other members' fees to make a profit.

## II.    ARGUMENT

In her Complaint Plaintiff asserts causes of action for: breach of contract, violation of the Michigan Consumer Protection Act, unjust enrichment/restitution, money had and received, negligence and violation of the Electronic Fund Transfer Act. Plaintiff's contract claim is flatly rebutted by the Contract, which states that Advia will pay or deny items based on the available funds in Plaintiff's account. Plaintiff's claim for violation of the consumer protection laws of Michigan fails to state a claim for relief. Plaintiff's claim for unjust enrichment and money had and received are both barred by Michigan law because a written contract exists between the parties. Plaintiff's claim for negligence is barred by the economic loss doctrine. Finally, Plaintiff's claim based upon the Electronic Fund Transfer Act is improper because the form used by Advia complies with the statute and mirrors the sample form provided by the federal government. Even when the Court accepts the facts alleged by Plaintiff as true, she fails to set forth claims upon which she is entitled to relief. Her Complaint should therefore be dismissed with prejudice.

### A.    Legal Standard

This Motion seeks dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure (12)(b)(6). Rule 12(b)(6) authorizes the court to assess whether the plaintiff has stated a claim upon which relief may be granted. In deciding a motion to dismiss under Rule 12(b)(6),

the court must construe the complaint in favor of the plaintiff, accept the factual allegations of the complaint as true, and determine whether the allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

However, this Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). As the United States Supreme Court has instructed regarding motions to dismiss, conclusory allegations are entirely inadequate to survive a motion; there must be a sufficient allegation of actual *facts* such that a claim can reasonably be determined to be plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly,* 550 U.S. at 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, a complaint must be dismissed if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Not only are sufficient factual assertions to state a claim required, but the factual assertions must state a claim that is "'plausible on its face.'" *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* While a pleading generally need not contain detailed allegations, it must allege sufficient facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits thereto, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008), citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). If the document

contradicts the allegations in the Complaint, it is the document that controls, not the bare allegations. *Forrest v. Universal Savings Bank*, 507 F.3d 540, 542 (7th Cir. 2007). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Id.* A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

### B. The Court Should Dismiss Plaintiff's Claim For Breach Of Contract Because Advia Complied With The Terms Of The Contract.

To state a claim for breach of contract in Michigan, a plaintiff must demonstrate (1) the existence of a valid contract between the parties; (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). "A breach of contract is a failure without legal excuse to perform any promise which forms a whole or a part of a contract. *Sagebrush Dev., Inc. v. Moehrke*, 604 P.2d 198, 201 (Wyo. 1979) (citing *Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598 (Ohio 1953)).

Plaintiff alleges Advia breached the Contract because it used an available balance as opposed to the actual balance.[2] However, the factual assertions set forth in the Complaint are directly contradicted by the express terms of the Contract. Specifically, Plaintiff alleges that: (1) Advia has an overdraft program (Courtesy Pay) which is contrary to the express terms of the Contract; (2) Advia's overdraft program is contrary to how Advia represents its overdraft program to its members; and (3) the program is contrary to what consumers expected because of

---

[2] The Consumer Finance Protection Bureau's Overdraft Report discusses the use of available balance by institutions. If use of available balance was prohibited, the CFPB would certainly have said as much in the report. *See* Pages 42-43 of the CFPB's 2013 Overdraft Report, available at http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

the timing when Advia assessed overdraft fees.  (ECF 1 at ¶ 14).  Plaintiff alleges that "[t]he

contracts authorize Defendant to assess overdraft fees only for transactions for which there was

*not money in the account to pay the item*."  (*Id*. at ¶ 36) (Emphasis added).  Plaintiff's

allegations are contrary to the express terms of the Contract which clearly sets forth: (1) that

items will be posted as presented; and (3) that paid as presented may result in higher overdraft

fees.³

In plain language, the Contract identifies the Courtesy Pay program that Advia offers and

also plainly states that a depositor can elect eliminate this service.  (Exhibit 1).  The Contract

states that Courtesy Pay is a service that is included as part of the agreement, it also explains

when and how it would be applied to Plaintiff's account.

> Courtesy Pay is a discretionary service that allows us to pay charges
> against our member's checking account even if it causes the account to
> become overdrawn.
>
> * * *
>
> If the account has been maintained in good standing… we may, at our
> sole discretion, pay overdrafts, including our normal Courtesy Pay
> charge(s).  **Whether we pay or return an item, your account will be
> assessed an Overdraft fee**…***Certain transaction including ATM and
> one-time debit require additional opt-in pursuant to federal law***.

(*Id*. at p. 3) (emphasis added).  Contrary to Plaintiff's allegations set forth in the Complaint, in

reality the Contract plainly and expressly identifies the Courtesy Pay program and specifies that

it will not be applied to ATM and one-time debit card transactions unless Plaintiff opts-in.  (*Id*.).

Plaintiff complains about the timing of when transactions were posted to her account and

overdraft fees were assessed.  Pursuant to Michigan law, a financial institution may post debits

and credits to an account in any order—largest to smallest, order received etc.  MCL

---

³ "A contract must be interpreted according to its plain and ordinary meaning." *Klein v. HP
Pelzer Auto. Sys., Inc.*, 306 Mich. App. 67, 75-76, 854 N.W.2d 521, 526 (2014) *appeal denied*,
497 Mich. 959, 858 N.W.2d 465 (2015) (*quoting Wells Fargo Bank, NA v. Cherryland Mall Ltd.
Partnership*, 300 Mich. App. 361, 386, 835 N.W.2d 593 (2013)).

§ 440.4303(2) ("[s]ubject to subsection (1) items may be accepted, paid, certified, or charged to the indicated account of its customer *in any order*") (emphasis added).  Comment 7 to MCL § 440.4303(2) explains the reason for the rule:

> As between one item and another no priority rule is stated. This is justified because of the impossibility of stating a rule that would be fair in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer's account; the possible methods of receipt; and other variables. Further, the drawer has drawn all the checks, the drawer should have funds available to meet all of them and has no basis for urging one should be paid before another; and the holders have no direct right against the payor or bank in any event, unless of course, the bank has accepted, certified or finally paid a particular item, or has become liable for it under Section 4-302. Under subsection (b) the bank has the right to pay items for which it is itself liable ahead of those for which it is not.

Thus, Michigan law expressly permits Advia to post Plaintiff's checks in any order.

Notwithstanding its legal right to do so, the Contract states that Advia posts items to Plaintiff's account in the order that they are received.  (Exhibit 1 at p. 2).  Thus, the Contract plainly and expressly states how Advia will post transactions to the account and provides Plaintiff with fair warning that the way Advia posts items to the account may result in higher fees:

> The law permits us to pay items (such as checks or drafts) drawn on your account in any order.  To assist you in handling your account with us, we are providing you with the following information regarding how we process the items that you write.  When processing items drawn on your account, our policy is to pay them in the order that they are received.  The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented. There is no policy that is favorable in every instance.  If the smallest items are paid first, you may have fewer NSF or overdraft fees, but the largest, and perhaps most important items (such as rent or mortgage payments) might not be paid.  If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF).   The amounts of the overdraft and the NSF Fees are disclosed elsewhere.  By paying items in the order that we receive them, we think our policy attains a reasonable balance between minimizing additional cost to you and paying your more important items.

(*Id.*).  The Contract expressly states that Advia will post all items as presented.

Thus, the express language of the Contract contradicts Plaintiff's assertions and

establishes that Plaintiff's breach of contract claim should be dismissed. Advia and Plaintiff were free to agree how items would be posted to Plaintiff's account. The Contract plainly explains that items posted to Plaintiff's account will be paid as presented. (*Id*.). It alerts Plaintiff to the fact that the ordering of the payments may result in more overdrafts than if posted in a different order. (*Id*.). Plaintiff cannot evade the consequences of the express language set forth in the Contract:

> [t]his approach, where judges divine the parties' reasonable expectations and then rewrite the contract accordingly, is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstances, such as a contract in violation of law or public policy.

*Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*, 295 Mich. App. 99, 126, 812 N.W.2d 799, 815 (2011) (*citing Wilkie v. Auto–Owners Ins. Co.*, 469 Mich. 41, 51, 664 N.W.2d 776 (2003)).

When Plaintiff presented items that exceeded her balance, Advia paid the items pursuant to Courtesy Pay or returned them NSF. Moreover, it paid them exactly as the Contract provided, in the order received. Plaintiff's claims for breach of contract are flatly contradicted by the express terms of the Contract and Advia's conduct which followed the Contract. Plaintiff is unable to demonstrate the third element of a claim for breach of contract; that Advia breached the terms of the agreement--Plaintiff's Complaint does not identify any actions of Advia that breached the terms of the agreement. *In re Brown*, 342 F.3d at 628. Similarly, her claim for breach of the covenant of good faith and fair dealing also fails as there is no breach of the covenant when a party does what it stated it would do in the contract. *Hassler v. Sovereign Bank,* 374 Fed. Appx. 341 (3rd Cir. 2010)(not reported) (party cannot ignore contract language and argue that he could not have expected bank's rearrangement of the charges and his incurrence of overdraft fees in the manner described); MCL 440.4303(2).

Courts routinely dismiss cases such as this when the allegations are directly refuted by the actual contract. *See Shapiro v. Am.'s Credit Union*, 2013 WL 5373269, at *2 (W.D. Wash. Sept. 25, 2013) (dismissing claims for breach of contract and EFTA violation because the credit union's contract properly disclosed its overdraft policy, notwithstanding plaintiff's allegations to the contrary); *Fischer & Mandell LLP v. Citibank, N.A.*, 2010 WL 2484205 at *5-6 (S.D.N.Y. 2010) (holding that plaintiff's breach of contract claim failed as a matter of law because financial institution's account agreements clearly described its policies for deposit and clearance of checks and the financial institution acted in compliance with those provisions); *Webb v. Republic Bank & Trust Co.*, 2013 WL 5447709 at *4 (W.D. Ky. 2013) (dismissing plaintiff's breach of contract claim, in part, because "the terms governing the parties' relationship authorized Defendant to charge overdraft fees to Plaintiff's account based on high-to-low sequencing" and "[t]herefore, Plaintiff's breach of contract claim is therefore without merit.").

Just as in *Shapiro*, *Fischer* and *Webb*, here Advia acted in conformance with the Contract and therefore there can be no breach of that contract. Consequently, Plaintiff's claim for breach of contract should be dismissed.

### C. Plaintiff's Claim for Violation of the Michigan Consumer Protection Act Should Be Dismissed.

In her second claim, Plaintiff alleges Advia has violated the Michigan Consumer Protection Act ("MCPA") based on her claim that Advia misled Plaintiff by charging overdraft fees for transactions when there were funds in the accounts. (ECF 1 at ¶¶ 43-48).

The MCPA does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL § 445.904(1)(a). In *Smith v. Globe Life Ins. Co.*, 460 Mich. 446; 597 N.W.2d 28 (1999), the Michigan Supreme Court considered whether an insurer was liable under

the Michigan Consumer Protection Act for misrepresenting benefits, terms and conditions in its insurance policy. The insurer argued that it was exempt from liability under the MCPA because the Credit Insurance Act, MCL § 550.601, *et seq.*, regulated insurance policies. That statutes provides "All life insurance and all accident and health insurance sold in connection with loans or other credit transactions shall be subject to the provisions of this act." The Court concluded that under § 4(1)(a), "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the *general transaction* is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Id.* at 465 (emphasis added).

Here, for example, the Credit Union Act, MCL § 490.101, *et seq.* and the Michigan Department of Labor and Economic Growth Office of Financial and Insurance Services Credit Union Rules govern credit unions and their actions. Pursuant to the holding set forth in *Smith*, *supra*, the MCPA does not apply to Advia or Plaintiff and her account and this claim must therefore be dismissed.

**D. Plaintiff's Third Claim For Unjust Enrichment Should be Dismissed.**

**1. The Claim For Unjust Enrichment is Barred As a Matter of Law Because A Written Contract Exists Between The Parties.**

Plaintiff's third cause of action is for unjust enrichment, which was pled in haste fashion in contravention of *Iqbal* and *Twombley*. (ECF 1 at ¶¶ 49-51). Michigan courts only permit plaintiffs to recover damages under this theory when there is no contract but the plaintiff has provided goods or performed services for which they should be reimbursed.

> The theory underlying quantum merit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another. *Martin v. East Lansing School Dist.*, 193 Mich. App. 166, 177, 483 N.W.2d 656 (1992). "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003). "Generally, an implied contract may not be found if there is an express

contract between the same parties on the same subject matter."   42 CJS, Implied
and Constructive Contracts, §  34, p. 33 (emphasis added).

*Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187, 194-195; 729 N.W.2d 898 (2006).

Here, Plaintiff has alleged the existence of an express written contract between the
parties.  (ECF 1 at ¶ 14; *id*. at 19 ("Plaintiff entered into a contract with Advia"); *id*. at ¶ 35
("Plaintiff and each of the Class members entered into contracts covering the subject of overdraft
transactions, which was drafted by and is binding on Defendant")).  Consequently, the claim for
unjust enrichment may be summarily dismissed.

### 2.     *Advia Was Not Unjustly Enriched.*

In addition to the fact that the unjust enrichment claim cannot be brought because
Plaintiff references the Contract throughout her Complaint, the Court can and should dismiss the
unjust enrichment claim on another basis.   "To sustain an unjust enrichment claim, a plaintiff
must demonstrate (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to
plaintiff as a result." *AFT Michigan v. Michigan*, 303 Mich. App. 651, 660-61, 846 N.W.2d 583,
590 *appeal granted*, 495 Mich. 1002, 846 N.W.2d 544 (2014) *and aff'd sub nom. AFT Michigan
v. State of Michigan*, 497 Mich. 197, 866 N.W.2d 782 (2015).   A party cannot show retention
would be unjust unless it can establish that "the failure of remuneration enriched defendant
beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d
519, 526 (1994) (*citing Associates Commercial Corp., supra*, 511 A.2d 709; *Callano v.
Oakwood Park Homes Corp*., 91 N.J. Super. 105, 219 A.2d 332 (App. Div. 1966); *St. Paul Fire
& Marine Ins. Co. v. Indemnity Ins. Co.*, 158 A.2d 825 (1960)).   As set forth above, the
agreement between the parties stated how Advia was going to order the items for payment and
how it would charge for overdrafts.  Advia was not enriched beyond what the parties agreed to in
the Contract, and as a result this claim should be dismissed.

**E.    The Court Should Dismiss Plaintiff's Fourth Claim For Money Had And Received Because It Is Merely A Repackaging Of All The Other Causes Of Action.**

Plaintiff's fourth claim is for money had and received, and is also pled in summary fashion in contravention of *Iqbal* and *Twombley*.  (ECF 1 at ¶¶ 52-54).

In Michigan, a claim for "money had and received" is treated as a claim for unjust enrichment.  *Herrman v. Gleason*, 126 F.2d 936, 940 (6th Cir. 1942); *Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, 2011 WL 1193647 *5 n. 3 (E.D. Mich. 2011) (unpublished).  Thus, this claim should be dismissed on the same grounds that Plaintiff's unjust enrichment claim should be dismissed—these equitable theories are not available here because a written contract existed between the parties.  *See Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 194-95, 729 N.W.2d 898 (2006).  *See also, In re Rankin*, 2006 BL 96852, *11 (Bankr. E.D. Mich. Sept. 11, 2006) (holding that a claim "For Money Had and Received is not recognized as a cause of action under Michigan law.").

The core allegation is that Plaintiff paid overdraft fees that she should not have had to; thus, Advia should return the money to her.  First, as set forth above, the claim fails because the Contract expressly states that overdrafts will be determined by available funds.  (Exhibit 1). The cause of action also fails because it was not pled properly.  "A cause of action for money had and received is stated if it is alleged the defendant is indebted to the plaintiff in <u>a certain sum</u> for money had and received by the defendant for the use of the plaintiff."  *Kandel v. Brother Int'l Corp.*, 2009 WL 9100406 at *1 (C.D. Cal. 2009)(*citing Farmers Ins. Exchange v. Zerin*, 53 Cal.App.4th 445, 460, 61 Cal.Rptr.2d 707 (1997)(emphasis added).  To properly allege a cause of action for money had and received, Plaintiff was required to allege "(1) the statement of indebtedness <u>in a certain sum</u>, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment."  *Kandel*, 2009 WL 9100406 at *1 (emphasis added).  When a

plaintiff merely repackages her other claims for damages as a claim for money had and received, the claim is properly dismissed with prejudice. *Id.*

Here, the Plaintiff has merely repackaged her other claims as a claim for money had and received. She is claiming the same thing as in her breach of contract, negligence and unjust enrichment claims; that she incurred overdraft fees that she should not have had to pay. She has not alleged anything new; she has merely repackaged her core complaint. As such, the Court should dismiss the claim with prejudice. *Id.* The Court has an alternative ground to dismiss the fourth cause of action. The cause of action for money had and received "is based on a promise implied by law or quasi contract and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution." *Comcast of Or. II, Inc., v. City of Eugene*, 209 P.3d 800, 809 (Or. 2009) (*quoting Powell v. Sheets*, 251 P.2d 108, 116–17 (Or.1952)). Here, there is an express contract between the parties that governs their rights, duties and obligations. When an express contract exists, a promise implied by law cannot be maintained. *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187, 194-95, 729 N.W.2d 898 (2006)

Even if the Court were inclined to allow it as a separate and distinct cause of action, Plaintiff has not sufficiently pled the cause of action because Plaintiff has not pled a sum certain. Accordingly, the Plaintiff's fourth cause of action should be dismissed with prejudice.

**F.      Plaintiff's Fifth Claim for Negligence Should be Dismissed with Prejudice.**

***1.       The Economic Loss Doctrine is an Absolute Bar to Plaintiff's Claim for Negligence.***

The economic loss doctrine bars Plaintiff's purported claim for negligence. The economic loss doctrine provides that "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract

alone, for he has suffered only 'economic' losses." *Huron Tool & Engineering Co v. Precision Consulting*, 209 Mich. App. 365, 368, 532 N.W.2d 541 (1995). Moreover, "[i]t has often been stated that the sometimes hazy distinction between contract and tort actions is made by applying the following rule: if a relation exists that would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise it will not. *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich. App. 641, 667-668; 378 N.W.2d 558 (1985). "[T]here must be some active negligence or misfeasance to support a tort. There must be some breach of duty distinct from breach of contract." *Hart v. Ludwig*, 347 Mich. 559, 560; 79 N.W.2d 895 (1956) (no action in tort was allowed where the parties had an oral contract regarding the servicing of an apple orchard). "The essence of the 'economic loss' rule is that contract law and tort law are separate and distinct, and the courts should maintain that separation in the allowable remedies." *Huron Tool and Eng. Co. v. Precision Consulting Serv., Inc.*, 209 Mich. App. 365, 371; 532 N.W.2d 541 (1995).

In *Quest Diagnostics, Inc. v. MCI Worldcom, Inc.*, 254 Mich. App. 372, 380-381, 656 N.W.2d 858 (2002), the Michigan Court of Appeals explained that the economic loss doctrine is not confined to cases concerning the sale of goods:

> we conclude that parties to a transaction for goods are precluded recovery in tort for economic loss caused by inferior products where: (1) the parties or others closely related to them had the opportunity to negotiate the terms of the sale of the good or product causing the injury, and (2) their economic expectations can be satisfied by contractual remedies.

*Id.*

In *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 521; 486 N.W.2d 612 (1992) the Court further explained the distinction between duties arising under tort and those arising under contract:

The purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident.

*Id.* (quoting *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 NJ 555, 579-80; 489 A.2d 660

(1985)).

There are few circumstances in which misfeasance on a contract could support an action

in tort:

[I]n each a situation of peril [was] created, with respect to which a tort action would lie without having recourse to the contract itself. Machinery [was] set in motion and life or property [was] endangered ... In such cases ... we have a "breach of duty distinct from ... contract." Or, as Prosser puts it ... "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not."

*Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.,* 454 Mich. 65, 83-83, 559 N.W.2d 647, 658

(1997) (citing *Hart*, 347 Mich. at 565). (Emphasis added). This is because parties to a

commercial transaction are capable of allocating the risks of economic damages in their

agreement. *Neibarger*, 486 N.W.2d at 616; *see also*, *Miller v. United States Steel Corp.*, 902

F.2d 573, 574 (7th Cir. 1990) ("[T]ort law is a superfluous and inapt tool for resolving purely

commercial disputes.")).

This policy is commonly known in Michigan as the "economic loss doctrine." As the

court in *Huron Tool and Eng. Co. v. Precision Consulting Serv., Inc.*, 209 Mich. App. 365, 371;

532 N.W.2d 541 (1995) explained:

The essence of the 'economic loss' rule is that contract law and tort law are separate and distinct, and the courts should maintain that separation in the allowable remedies. There is a danger that tort remedies could simply engulf the contractual remedies and thereby undermine the reliability of commercial transactions. Once the contract has been made, the parties should be governed by

it.

Thus, where the defendant's alleged actions are not extraneous to the contract but, rather, are "indistinguishable from the terms of the contract," the economic loss doctrine bars the tort claim.

*Id*. at 368.

By way of example, in *Sky Way, Inc., v. Jaco Aircraft, Inc.*, 1996 WL 33364410 (Unpublished, Mich. App. May 7, 1996), the court of appeals held a party's fraudulent misrepresentation claim that is simply a "recasting of its breach of contract" claim should be dismissed.

Moreover, in *Huron Tool*, the court concluded that the plaintiff's fraud claim was barred by the economic loss doctrine because:

> The fraudulent representations alleged by plaintiff concern the quality and characteristics of the software system sold by defendants. These representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached. Plaintiff fails to allege any wrongdoing by defendants independent of defendants' breach of contract and warranty. *Because plaintiff's allegations of fraud are not extraneous to the contractual dispute, plaintiff is restricted to its contractual remedies…*

*Id*. at 375. (Emphasis added).

Finally, in *CSX Transportation, Inc. v. Meserole Street Recycling*, 618 F. Supp. 2d 753, 764 (W.D. Mich. 2009), the plaintiff alleged that the defendants committed fraud by violating their obligations to provide accurate descriptions of their shipments in their bills of lading. *Id*. at 764, citing *Rinaldo's*, 454 Mich. at 84. The Court held that:

> In this case, the carriers' fraud claims are premised on statements contained on the face of the bills of lading-namely, the shippers' representations that the cargo shipped was "scrap paper" consisting of "99% paper, plastics and materials in baled format." Assuming, *arguendo*, that those statements are false, the carriers' remedy lies in contract, not tort.

618 F. Supp. at 774-75.

Here, the gravamen of Plaintiff's Complaint is that Advia charged "overdraft fees for transactions for which there was money in the checking account." (ECF 1 at ¶ 1). Plaintiff alleges Advia broke a promise it made in the Contract. Plaintiff has not identified any personal injury she suffered at the hands of Advia, nor has she identified any of her property that was injured by Advia. (ECF at ¶¶ 55-58). The duty Plaintiff claims Advia breached is not a duty imposed upon Advia by law, rather it is an obligation that Advia has under the Contract. A purely economic loss is generally defined as "the loss of the benefit of the user's bargain . . . without any claim of personal injury or damage to other property." *Calloway v. City of Reno,* 116 Nev. 250, 255, 993 P.2d 1259, 1263 (2000) (internal quotation omitted). Plaintiff's claim for negligence is for purely economic loss:

> Defendant breached this duty by unreasonably mishandling the accounts of Plaintiff and the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been charged.

(ECF 1 at ¶ 57). Plaintiff's claim sounds in contract, not tort. As such, the economic loss doctrine bars her claim for negligence and it should be dismissed with prejudice.

### 2. *Plaintiff Has Not Pled a Legally Recognized Duty of Care.*

The Court has an alternate basis to move for dismissal of the negligence claim, the Plaintiff's failure to identify a duty of care owed by Advia to the Plaintiff. "A cause of action for negligence must include allegations to support each of four elements: '(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages.'" *Diem v. Sallie Mae Home Loans, Inc.*, 307 Mich. App. 204, 214, 859 N.W.2d 238, 243-44 (2014) (*citing Loweke v. Ann Arbor Ceiling & Partition Co., LLC*, 489 Mich. 157, 162, 809 N.W.2d 553 (2011)). "It is axiomatic that there can be no tort liability unless a defendant owed a

duty to a plaintiff." *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 660, 822 N.W.2d 190, 196 (2012) (punctuation omitted). "Whether a defendant owes an actionable legal duty to the plaintiff is a question of law that must be decided by the court after 'assessing the competing policy considerations for and against recognizing the asserted duty.'" *Roberts v. Salmi*, 308 Mich. App. 605, 613, 866 N.W.2d 460, 465 (2014), *appeal granted*, 868 N.W.2d 911 (Mich. 2015) (*quoting In re Certified Question from the Fourteenth Dist. Court of Appeals of Texas*, 479 Mich. 498, 504–505, 740 N.W.2d 206 (2007)). "Only after finding that a duty exists may the factfinder determine whether, in light of the particular facts of the case, there was a breach of the duty." *Bailey v. Schaaf*, 494 Mich. 595, 603, 835 N.W.2d 413, 418 (2013).

A Bank does not owe a duty of care to guarantors (*Shawmut Bank v. Wayman*, 606 N.E.2d 925, 927 (1993)) nor does is owe a duty of care to its borrowers. *Clark v. Rowe,* 701 N.E.2d 624, 629 (Mass. 1998). Banks have no duty to act as either legal or financial advisors to their customers. *Casgar v. Citizens & Southern Nat. Bank,* 372 S.E.2d 815, 817 (Ga. Ct. App. 1988). Nor are they required to "insist that a borrower, or his wife, secure independent legal advice before entering into a loan transaction." *Lesser v. Strubbe,* 171 A.2d 114, 118 (N.J. Super. 1961). By contract, Plaintiff owed Advia the duty to carefully read and understand the terms of the Contracts. *Cara's Notions, Inc. v. Hallmark Cards, Inc.,* 140 F.3d 566, 571 (4th Cir. 1998) (citing *Sanger v. Yellow Cab Co.*, 486 S.W.2d 477, 481 (Mo. 1972) (*en banc*); *Harris v. Bingham*, 246 N.C. 77, 97 S.E.2d 453, 454 (1957)).

Because Plaintiff has not identified a legally recognized duty that is owed as a matter of law by Advia to her, she cannot prevail on a negligence claim. Even if she could identify such a duty, her claim is still barred by the economic loss doctrine. As such, the Court should dismiss the negligence claim with prejudice.

**G. Plaintiff's Sixth Claim for Violation of the Electronic Fund Transfer Act Should Be Dismissed Because Advia's Contract, Policies and Conduct Comply With Federal Law.**

Plaintiff's sixth claim for relief, alleging violation of the Electronic Fund Transfer Act ("EFTA"), should also be dismissed. (ECF 1 at ¶¶ 59-62). Advia is using model language, and its compliance with federal law is evident by simply reviewing the face of the actual document.

Title 12 of the Code of Federal Regulations ("C.F.R.) governs banks and banking transactions. 12 C.F.R. § 1005.17 governs what may and may not be put into the opt-in notice for overdraft programs. 12 C.F.R. § 1005.17(d) mandates:

> (d) Content and format. The notice required by paragraph (b)(1)(i) of this section shall be substantially similar to Model Form A–9 set forth in appendix A of this part, include all applicable items in this paragraph, and may not contain any information not specified in or otherwise permitted by this paragraph.
>
> (1) Overdraft service. A brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions.
>
> (2) Fees imposed. The dollar amount of any fees or charges assessed by the financial institution for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, including any daily or other overdraft fees. If the amount of the fee is determined on the basis of the number of times the consumer has overdrawn the account, the amount of the overdraft, or other factors, the institution must disclose the maximum fee that may be imposed.
>
> (3) Limits on fees charged. The maximum number of overdraft fees or charges that may be assessed per day, or, if applicable, that there is no limit.
>
> (4) Disclosure of opt-in right. An explanation of the consumer's right to affirmatively consent to the financial institution's payment of overdrafts for ATM and one-time debit card transactions pursuant to the institution's overdraft service, including the methods by which the consumer may consent to the service; and
>
> (5) Alternative plans for covering overdrafts. If the institution offers a line of credit subject to Regulation Z (12 CFR part 1026) or a service that transfers funds from another account of the consumer held at the institution to cover overdrafts, the institution must state that fact. An institution may, but is not required to, list additional alternatives for the payment of overdrafts.
>
> (6) Permitted modifications and additional content. If applicable, the institution may modify the content required by § 1005.17(d) to indicate that the consumer has the right to opt into, or opt out of, the payment of overdrafts under the institution's overdraft service for other types of transactions, such as checks,

ACH transactions, or automatic bill payments; to provide a means for the consumer to exercise this choice; and to disclose the associated returned item fee and that additional merchant fees may apply. The institution may also disclose the consumer's right to revoke consent. For notices provided to consumers who have opened accounts prior to July 1, 2010, the financial institution may describe the institution's overdraft service with respect to ATM and one-time debit card transactions with a statement such as "After August 15, 2010, we will not authorize and pay overdrafts for the following types of transactions unless you ask us to (see below)."

Advia's Opt-In Form contains all of the information required by 12 C.F.R. 1005.17. (Opt-In Form, attached as Exhibit 2). Furthermore, Advia's Opt-In Form is "substantially similar" to the "Model Form A-9" referenced in the statute. (See Model Form A-9, attached as Exhibit 3 and available at http://www.ecfr.gov/graphics/pdfs/er27de11.000.pdf). The Opt-In Form informs Plaintiff that there is an overdraft service, and what it is. (*Id*.). It identifies what the fees for using the overdraft services are, and what the limits are on the fees. (*Id*.). It discloses the right to opt-in to the overdraft service, and that Advia offers alternative overdraft services to Plaintiff. (*Id*.). Because the disclosures satisfy 12 C.F.R. 1005.17, this claim should be dismissed. The actual text of Advia's Opt-In Form (a document which is referenced throughout Plaintiff's Complaint) proves that this claim should be dismissed because the form complies with 12 C.F.R. 1005.17.

Other courts have dismissed claims alleging violations of the Electronic Fund Transfer Act when the text of the actual disclosures of the financial institution belie the allegations. For instance, in *Shapiro v. Am.'s Credit Union* the court dismissed a claim that a credit union violated the EFTA because the credit union's disclosure proved otherwise. 2013 WL 5373269, at *2 (W.D. Wash. Sept. 25, 2013) (finding that allegation that credit union "did not disclose its funds availability policy as required by the EFTA, 12 C.F.R. § 229.15, fails for the same reason. The Membership and Account Agreement described the Funds Availability Policy in

conformance with the EFTA."). *See also, Hill v. St. Paul Fed. Bank for Sav.*, 768 N.E.2d 322, 327-29 (Ill. App. Ct. 2002) (claim for deceptive practices properly dismissed even though agreement did not specify posting order but stated that overdraft charges would be incurred); *Smith v. First Union Nat'l Bank of Tenn.,* 958 S.W. 2d 113, 116-17 (Tenn. App. Ct. 1997) (act permitted by statute cannot be the basis of a violation of consumer protection act); *Hassler v. Sovereign Bank,* 374 Fed. Appx. 341, 343-44 (3rd Cir. 2010) (bank did not violate New Jersey Consumer Fraud Act when contract stated bank policy was to post checks in descending order).

Alternatively, Plaintiff's EFTA claim should be dismissed because it fails to meet the required pleading standards. The Complaint merely states that Advia violated the EFTA without offering any specifics as to how or why. Her recital of the statutory language does not satisfy the pleadings standards of an EFTA claim. *Webb*, 2013 WL 5447709 at *6 (dismissing EFTA claim because Plaintiff failed to allege any specific violations of the statute). Therefore, it must be dismissed. *See Iqbal*, 556 U.S. at 678-79 (holding that "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s]" lacking "further factual enhancement" will not satisfy the requirements for initial pleadings). *See also, Sprewell*, 266 F.3d at 988.

## III.    CONCLUSION

For the foregoing reasons this Court should issue an order dismissing Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

Dated: December 21, 2015

By: /s/ *Brandon J. Wilson*
    Brandon J. Wilson (P73042)
Attorneys for Defendant Advia Credit Union
450 West Fourth Street
Royal Oak, MI 48067
(248) 645-1483
(248) 645-1568 Fax
bjw@h2law.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2015, I electronically filed *Defendant Advia Credit Union's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* with the Clerk of the Court using the ECF system, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings via electronic notice of this filing.

Dated: December 21, 2015

/s/ *Brandon J. Wilson*
Brandon J. Wilson (P73042)

4835-8845-7004, v. 2