UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BECKY PINKSTON-POLING, individually,
and on behalf of all others similarly situated,

 Plaintiff,

vs.

ADVIA CREDIT UNION,

 Defendant.

Case No. 1:15-cv-1208
Hon. Gordon J. Quist

**ORAL ARGUMENT REQUESTED**

---

### DEFENDANT ADVIA CREDIT UNION'S
### MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
### PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Advia Credit Union, for the reasons more particularly stated in the accompanying Brief in Support, moves to dismiss Plaintiff's First Amended Complaint on the grounds that the Complaint fails to state a claim upon which relief can be granted.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

Dated: March 11, 2016

By: /s/ *Brandon J. Wilson*
 Brandon J. Wilson (P73042)
450 West Fourth Street
Royal Oak, MI 48067
(248) 645-1483; (248) 645-1568 Fax
bjw@h2law.com

James A. Kohl, NV Bar No. 5692
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 307-0840
jak@h2law.com

*Attorneys for Defendant Advia Credit Union*

## STATEMENT OF ISSUES PRESENTED

I. DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT?

    Plaintiff says:    NO.

    Advia says:    YES.

II. DOES THE COMPLAINT FAIL TO STATE A CLAIM FOR VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT?

    Plaintiff says:    NO.

    Advia says:    YES.

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED ................................................................................ i

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND .............................................................................................................. 2

III.  STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) ............................. 3

IV.   ARGUMENT .................................................................................................................... 4

    A.   PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED BECAUSE ADVIA COMPLIED WITH THE TERMS OF THE CONTRACT ......................... 4

    B.   PLAINTIFF'S CLAIM FOR VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT SHOULD BE DISMISSED BECAUSE ADVIA'S CONTRACT, POLICIES AND CONDUCT COMPLY WITH FEDERAL LAW ............................................................... 8

    C.   ANY AMENDMENT BY PLAINTIFF WOULD BE FUTILE ........................................... 11

V.    CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
 727 F.3d 502, 506 (6th Cir. 2013). ....................................................................... 11

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). ........ 11

*ALA, Inc. v. CCAIR, Inc.*,
 29 F.3d 855 (3d Cir.1994) ...................................................................................... 3

*Appalachian Railcar Services, Inc. v. Boatright Enterprises, Inc.*,
 602 F. Supp. 2d 829 (W.D. Mich. 2008) ................................................................ 4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................ 3, 11

*Bassett v. Nat'l Collegiate Athletic Assoc.*,
 528 F.3d 426 (6th Cir. 2008) .................................................................................. 1

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................... 3

*Brumbalough v. Camelot Care Ctrs., Inc.*,
 427 F.3d 996 (6th Cir. 2005) ................................................................................ 11

*Dillon v. DeNooyer Chevrolet Geo*,
 217 Mich. App. 163, 550 N.W.2d 846 (1996) ....................................................... 4

*Fischer & Mandell LLP v. Citibank, N.A.*,
 2010 WL 2484205 (S.D.N.Y. 2010) ...................................................................... 8

*Forrest v. Universal Savings Bank*,
 507 F.3d 540 (7th Cir. 2007) ................................................................................. 3

*Hanna v. Plumer*,
  380 U.S. 460, 468 (1965) ...................................................................................... 4

*Hassler v. Sovereign Bank,*
 374 Fed. Appx. 341 (3rd Cir. 2010) ................................................................. 7, 10

*Haywood v. Fowler*,
 190 Mich. App. 253, 475 N.W.2d 458 (1991) ....................................................... 4

*Hill v. St. Paul Fed. Bank for Sav.*,
 768 N.E.2d 322
  (Ill. App. Ct. 2002) .............................................................................................. 10

*In re Brown*,
  342 F.3d 620 (6th Cir. 2003) .................................................................................... 4, 7

*In re Landwehr's Estate*,
  286 Mich. 698; 282 N.W. 873 (1938) ........................................................................... 4

*Reed v. BAC Home Loans Servicing, LP*,
  2012 WL 1579340 (W.D. Mich. 2012) ......................................................................... 3

*Rose v. Hartford Underwriters Ins. Co.*,
  203 F.3d 417 (6th Cir. 2000) ...................................................................................... 11

*Sagebrush Dev., Inc. v. Moehrke*,
  604 P.2d 198 (Wyo. 1979) ............................................................................................ 4

*Shapiro v. Am.'s Credit Union*,
  2013 WL 5373269 (W.D. Wash. Sept. 25, 2013) ..................................................... 8, 10

*Smith v. First Union Nat'l Bank of Tenn.*,
  958 S.W. 2d 113 (Tenn. App. Ct. 1997) ...................................................................... 10

Sprewell v. Golden State Warriors,
  266 F.3d 979 (9th Cir. 2001) ...................................................................................... 11

*Steinmetz Elec. Contractors Ass'n v. Local Union No. 58 Int'l Bhd. of Elec. Workers, AFL–CIO*,
  517 F. Supp. 428 (E.D. Mich. 1981) ............................................................................. 5

*The Oak Rubber Company v. Bank One, N.A.*,
  214 F. Supp. 2d 820 (N.D. Ohio 2002) ......................................................................... 7

*Verderese v. Q Lube, Inc.*,
  1998 WL 1991608 (Mich. App. 1998) .......................................................................... 7

*Webb v. Republic Bank & Trust Co.*,
  2013 WL 5447709 (W.D. Ky. 2013) ........................................................................ 8, 11

*Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*,
  295 Mich. App. 99, 812 N.W.2d 799, 815 (2011) ......................................................... 6

**Statutes**

15 U.S.C. § 1693 .................................................................................................................. 2

MCL§ 440.4303(2) ............................................................................................................. 7

**Court Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 3

**Regulations**

12 C.F.R. § 1005.17 ............................................................................................................. 2, 8, 10

12 C.F.R. § 229.15 ..................................................................................................................... 10

## **BRIEF IN SUPPORT**

### I.     INTRODUCTION

This putative class action suit arises out of Plaintiff Becky Pinkston-Poling's failure to keep enough funds in her checking account to pay for the items she purchased. Plaintiff opened a checking account with Defendant Advia Credit Union ("Advia"). *See* Doc. No. 11 at ¶ 2. Pursuant to the terms of the Account Agreement (the "Contract"),[1] Plaintiff agreed to keep sufficient funds in the account to cover all items she purchased or paid for. In the event she failed to have sufficient funds in her account, Plaintiff agreed that Advia could, but was not obligated to, pay the overdraft and charge her a fee for the overdraft. In the alternative, Advia could have returned items due to Non-Sufficient Funds ("NSF"). Under either scenario, Plaintiff agreed she would be charged for purchasing items that exceed the amount of funds she had available to pay for the purchases.

Plaintiff claims, incorrectly, that Advia breached the Contract and that Advia is unfairly taking advantage of its customers through its overdraft program as a source of income. Plaintiff does not specify which portion of the Contract Advia breached, nor does she specify how much money she had in her account when she was allegedly charged improper overdraft fees. Plaintiff only says that studies show that banks have dramatically increased profits with overdraft agreements. Plaintiff would like to use the studies cited in the Complaint to tar and feather Advia with the claim that it is using the overdraft charges to maximize its profits. Plaintiff fails to grasp the distinction between a bank and a credit union. While banks are for profit enterprises, credit unions are not. Credit unions are community based nonprofit cooperatives whose members can

---

1 The Contract is attached to the First Amended Complaint as Exhibit 1; it is also attached hereto for the Court's convenience. Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Bassett v. Nat'l Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

borrow from pooled deposits. Advia is a state chartered credit union. *See* Doc. No. 11 at ¶ 3. Like all other credit unions, Advia is not run for profit; it is run for the benefit of its members. Advia therefore is not incentivized to unfairly charge Plaintiff, or any of its other members, fees to make a profit.

Plaintiff also alleges that Advia failed to comply with Regulation E, 12 C.F.R. § 1005.17 of The Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*. *See* Doc. No. 11. But, as shown in Exhibits 1 and 2 of Plaintiff's First Amended Complaint, the Contract states that Plaintiff had to affirmatively opt-in to have overdrafts apply to ATM transactions and Advia's Opt-In Form contains all of the information required by 12 C.F.R. 1005.17.

Plaintiff's First Amended Complaint should be dismissed with prejudice.

## II.   BACKGROUND

Plaintiff filed her original Complaint on November 19, 2015, which asserted six causes of action. *See* Doc. No. 1. Advia filed a motion to dismiss on December 21, 2015, wherein Advia argued that all six of those claims should be dismissed. *See* Doc. No. 5. Plaintiff stipulated to dismiss all but two of her original claims. Plaintiff filed her First Amended Complaint on February 19, 2016. *See* Doc. No. 11. The First Amended Complaint asserts two causes of action: (1) breach of the Contract; and (2) violation of the Electronic Fund Transfer Act. *Id.*

The Contract directly rebuts both claims because it plainly states that Advia will pay or deny items based on initiated transactions, and that the plaintiff must opt-in to have ATM overdrafts covered by the Courtesy Pay program. *See* Ex. 1 at p. 3. Thus, Plaintiff has failed to set forth claims upon which she is entitled to relief because the Contract referenced throughout her First Amended Complaint establishes that Plaintiff's assertions simply are not true. Moreover, Advia's Opt-In Form—Exhibit 2 to Plaintiff's First Amended Complaint—clearly

2

contains the disclosures required under the EFTA. Consequently, this Court should dismiss the First Amended Complaint with prejudice.

### III. STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6)

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must contain "enough factual matter" that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556)). The plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

This Court has correctly recognized that it may consider matters outside of the pleadings in addressing a motion under Fed. R. Civ. P. 12(b)(6). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto ... so long as they are referred to in the Complaint and are central to the claims contained therein." *Reed v. BAC Home Loans Servicing, LP*, 2012 WL 1579340, at *1 (W.D. Mich. 2012) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir.2008) (citation omitted)). If the document contradicts the allegations in the Complaint, the document controls, not the bare allegations. *Forrest v. Universal Savings Bank*, 507 F.3d 540, 542 (7th Cir. 2007); *see also, ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Forrest*. 507 F.3d at 542.

## IV.   ARGUMENT

**A.   PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED BECAUSE ADVIA COMPLIED WITH THE TERMS OF THE CONTRACT.**

Plaintiff fails to state a claim for breach of the Contract. To state a claim for breach of contract in Michigan, a plaintiff must demonstrate (1) the existence of a valid contract between the parties; (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003)[2]. "A breach of contract is a failure without legal excuse to perform any promise which forms a whole or a part of a contract. *Sagebrush Dev., Inc. v. Moehrke*, 604 P.2d 198, 201 (Wyo. 1979) (citing *Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598 (Ohio 1953)).

In interpreting a contract, courts look first to the language in the written agreement. *Haywood v. Fowler*, 190 Mich. App. 253, 475 N.W.2d 458, 461 (1991) ("Where the language of a contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning."). "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." *Dillon v. DeNooyer Chevrolet Geo*, 217 Mich. App. 163, 550 N.W.2d 846, 848 (1996). "Where the language of the writing is not ambiguous the construction is a question of law for the court 'on a consideration of the entire instrument' " *In re Landwehr's Estate*, 286 Mich. 698, 282 N.W. 873, 874 (1938) (quoting *Griffin Mfg. Co. v. Mitshkun*, 233 Mich. 640, 207 N.W. 814, 816 (1926)).

---

2  Under the *Erie* doctrine, federal courts apply state substantive law and federal procedural law unless the outcome-determinative analysis under the twin aims of *Erie* dictate a different result. *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). "A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts." *Appalachian Railcar Services, Inc. v. Boatright Enterprises, Inc.*, 602 F. Supp. 2d 829, 846 (W.D. Mich. 2008).

4

An ambiguity as a matter of law is not necessarily created by mere disagreement among the parties as to the meaning of a contract term. *Steinmetz Elec. Contractors Ass'n v. Local Union No. 58 Int'l Bhd. of Elec. Workers, AFL–CIO*, 517 F. Supp. 428, 432 (E.D. Mich. 1981).

Plaintiff alleges Advia breached the Contract because it used an available balance as opposed to the actual balance.[3] Specifically, Plaintiff alleges that: (1) Advia has an overdraft program (Courtesy Pay) which is contrary to the express terms of the Contract; (2) Advia's overdraft program is contrary to how Advia represents its overdraft program to its members; and (3) the program is contrary to what consumers expected because of the timing when Advia assessed overdraft fees. *See* Doc. No. 11 at ¶ 14. Plaintiff alleges that "[t]he contracts authorize Defendant to assess overdraft fees only for transactions for which there was *not money in the account to pay the item.*" *Id*. at ¶ 15 (Emphasis added).

Plaintiff's allegations are contrary to the express terms of the Contract which clearly sets forth that the Courtesy Pay program is triggered when Plaintiff initiated charges that exceeded her account balance. In plain language, the Contract identifies the Courtesy Pay program, that Courtesy Pay is a service that is included as part of the agreement, and it also explains when and how it would be applied to Plaintiff's account.

> Courtesy Pay is a discretionary service that allows us to pay charges against our member's checking account even if it causes the account to become overdrawn.
>
> * * *
>
> If the account has been maintained in good standing… we may, at our sole discretion, pay overdrafts, including our normal Courtesy Pay charge(s). Whether we pay or return an item, your account will be assessed an Overdraft fee. … [Courtesy Pay] is not a loan. No additional agreements need to be signed, and it costs nothing unless the privilege is used – by initiating checks, electronic fund

---

[3] The Consumer Finance Protection Bureau's Overdraft Report discusses the use of available balance by institutions. If use of available balance was prohibited, the CFPB would certainly have said as much in the report. *See* Pages 42-43 of the CFPB's 2013 Overdraft Report, available at http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

5

> transfers, or other payment or withdrawal requests for more than is on deposit in the account. Certain transactions including ATM and one-time debit require additional opt-in pursuant to federal law.

*See* Ex. 1 at p. 3.

Thus, contrary to Plaintiff's allegations set forth in the First Amended Complaint, the Contract plainly and expressly identifies the Courtesy Pay program and specifies (1) that initiating charges that exceed the balance of the account trigger the program and (2) Courtesy Pay will not be applied to ATM and one-time debit card transactions unless Plaintiff opts-in. *Id.*

The express language of the Contract contradicts Plaintiff's assertions and establishes that Plaintiff's breach of contract claim should be dismissed, with prejudice. Advia and Plaintiff were free to agree how items would be posted to Plaintiff's account. The Contract states that Courtesy Pay or NSF fees applied when Plaintiff initiated electronic fund transfers or withdrawal requests that exceed the amount of funds on deposit. *Id.*

In her First Amended Complaint, Plaintiff effectively asks the Court to alter the Contract to read:

> No additional agreements need to be signed, and it costs nothing unless [Courtesy Pay] is used – by ~~initiating checks, electronic fund transfers, or other payment or withdrawal requests~~ presenting items for payment for more than is on deposit in the account.[4]

Asking the court to rewrite the Contract according to Plaintiff's wishes "is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstances, such as a contract in violation of law or public policy." *Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*, 295 Mich. App. 99, 126, 812 N.W.2d 799 (2011) (citing *Wilkie v. Auto–Owners Ins. Co.*,

---

[4] For purposes of illustration, in the case of a debit card, a transaction is *initiated* when the debit card is swiped and authorized. *Presentment* refers to the subsequent settlement and posting of the transaction which was previously initiated by the member and authorized by the credit union.

469 Mich. 41, 51, 664 N.W.2d 776 (2003)). And, again, the Court is bound by the plain language of the Contract, not Plaintiff's contradictory factual allegations.

Unless the language of the Contract is changed to contain the terms that Plaintiff wishes were in the Contract, Plaintiff is unable to demonstrate that Advia breached the Contract (the third element of a claim for breach of contract). In fact, Plaintiff's First Amended Complaint does not identify any actions of Advia that breached the *written terms* of the Contract. *In re Brown*, 342 F.3d at 628. Instead, Plaintiff's First Amended Complaint expresses her desire that the Contract be construed to include terms that are contrary to its written terms. Her breach of contract claim fails as a matter of law. *Id.*

Similarly, her claim for breach of the covenant of good faith and fair dealing also fails as there is no breach of the covenant when a party does what it stated it would do in the contract. *Hassler v. Sovereign Bank,* 374 Fed. Appx. 341 (3rd Cir. 2010)(not reported) (party cannot ignore contract language and argue that he could not have expected bank's rearrangement of the charges and his incurrence of overdraft fees in the manner described); MCL§ 440.4303(2).

Moreover, the fact that Advia enforced the terms of the Contract against Plaintiff does not give rise to a claim for breach of the covenant of good faith and fair dealing. The law is "crystal clear that an actor does not act in 'bad faith' when it decides to enforce its contractual rights." *The Oak Rubber Company v. Bank One, N.A.*, 214 F. Supp. 2d 820, 833 (N.D. Ohio 2002); *see also, Verderese v. Q Lube, Inc.*, 1998 WL 1991608, at *4 (Mich. App. 1998) ("Nor may a court use the implied covenant of good faith as a tool for rewriting the parties' agreement based on unspecified notions of fairness."). A "party may even enforce its contractual rights to the 'great discomfort' of the other party without violating its duty of good faith." *Oak Rubber Company*, 214 F. Supp. 2d at 833.

Courts routinely dismiss cases such as this when the allegations are directly refuted by the actual contract. *See Shapiro v. Am.'s Credit Union*, 2013 WL 5373269, at *2 (W.D. Wash. 2013) (dismissing claims for breach of contract and EFTA violation because the credit union's contract properly disclosed its overdraft policy, notwithstanding plaintiff's allegations to the contrary); *Fischer & Mandell LLP v. Citibank, N.A.*, 2010 WL 2484205 at *5-6 (S.D.N.Y. 2010) (holding that plaintiff's breach of contract claim failed as a matter of law because financial institution's account agreements clearly described its policies for deposit and clearance of checks and the financial institution acted in compliance with those provisions); *Webb v. Republic Bank & Trust Co.*, 2013 WL 5447709 at *4 (W.D. Ky. 2013) (dismissing plaintiff's breach of contract claim, in part, because "the terms governing the parties' relationship authorized Defendant to charge overdraft fees to Plaintiff's account based on high-to-low sequencing" and "[t]herefore, Plaintiff's breach of contract claim is therefore without merit.").

Just as in *Shapiro*, *Fischer* and *Webb*, here Advia acted in conformance with the Contract and therefore there can be no breach of that contract. Consequently, Plaintiff's claim for breach of contract should be dismissed with prejudice.

**B.     PLAINTIFF'S CLAIM FOR VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT SHOULD BE DISMISSED BECAUSE ADVIA'S CONTRACT, POLICIES AND CONDUCT COMPLY WITH FEDERAL LAW.**

Plaintiff's second claim for relief, alleging violation of EFTA should also be dismissed. Title 12 of the Code of Federal Regulations ("C.F.R.") governs banks and banking transactions. The EFTA is implemented through Regulation E. Regulation E, 12 C.F.R. 1005.17, governs what may and may not be put into the opt-in notice for overdraft programs. 12 C.F.R. 1005.17(d) mandates:

> (d) Content and format. The notice required by paragraph (b)(1)(i) of this section shall be substantially similar to Model Form A–9 set forth in appendix A of this

part, include all applicable items in this paragraph, and may not contain any information not specified in or otherwise permitted by this paragraph.

>   (1) Overdraft service. A brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed, including ATM and one-time debit card transactions.
>
>   (2) Fees imposed. The dollar amount of any fees or charges assessed by the financial institution for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, including any daily or other overdraft fees. If the amount of the fee is determined on the basis of the number of times the consumer has overdrawn the account, the amount of the overdraft, or other factors, the institution must disclose the maximum fee that may be imposed.
>
>   (3) Limits on fees charged. The maximum number of overdraft fees or charges that may be assessed per day, or, if applicable, that there is no limit.
>
>   (4) Disclosure of opt-in right. An explanation of the consumer's right to affirmatively consent to the financial institution's payment of overdrafts for ATM and one-time debit card transactions pursuant to the institution's overdraft service, including the methods by which the consumer may consent to the service; and
>
>   (5) Alternative plans for covering overdrafts. If the institution offers a line of credit subject to Regulation Z (12 CFR part 1026) or a service that transfers funds from another account of the consumer held at the institution to cover overdrafts, the institution must state that fact. An institution may, but is not required to, list additional alternatives for the payment of overdrafts.
>
>   (6) Permitted modifications and additional content. If applicable, the institution may modify the content required by § 1005.17(d) to indicate that the consumer has the right to opt into, or opt out of, the payment of overdrafts under the institution's overdraft service for other types of transactions, such as checks, ACH transactions, or automatic bill payments; to provide a means for the consumer to exercise this choice; and to disclose the associated returned item fee and that additional merchant fees may apply. The institution may also disclose the consumer's right to revoke consent. For notices provided to consumers who have opened accounts prior to July 1, 2010, the financial institution may describe the institution's overdraft service with respect to ATM and one-time debit card transactions with a statement such as "After August 15, 2010, we will not authorize and pay overdrafts for the following types of transactions unless you ask us to (see below)."

9

Plaintiff appears to claim that Advia's Opt-In Form fails to comply with the EFTA. *See* Doc. No. 11 at ¶ 44. But Advia's Opt-In Form contains all of the information required by 12 C.F.R. 1005.17. *See* Doc. No. 11 at p. 33, and attached as Exhibit 2; *See* Ex. 2. The Opt-In Form tells Plaintiff that there is an overdraft service, and says what it is. *Id*. It identifies what the fees for using the overdraft services are, and what the limits are on the fees. *Id*. It discloses the right to opt-in to the overdraft service, and that Advia offers alternative overdraft services to Plaintiff. *Id*. The very exhibit Plaintiff attached to her Complaint proves that Advia's Opt-In Form complies with 12 C.F.R. 1005.17. Because the disclosures plainly satisfy 12 C.F.R. 1005.17, Plaintiff's claim for violation of the EFTA should be dismissed.

Other courts have dismissed claims alleging violations of the EFTA when the text of the actual disclosures of the financial institution belie the allegations. For instance, in *Shapiro v. Am.'s Credit Union*, the court dismissed a claim that a credit union violated the EFTA because the credit union's disclosure proved otherwise. *Supra*, at *2 (finding that allegation that credit union "did not disclose its funds availability policy as required by the EFTA, 12 C.F.R. § 229.15, fails for the same reason. The Membership and Account Agreement described the Funds Availability Policy in conformance with the EFTA."). *See also, Hill v. St. Paul Fed. Bank for Sav.*, 768 N.E.2d 322, 327-29 (Ill. App. Ct. 2002) (claim for deceptive practices properly dismissed even though agreement did not specify posting order but stated that overdraft charges would be incurred); *Smith v. First Union Nat'l Bank of Tenn.,* 958 S.W. 2d 113, 116-17 (Tenn. App. Ct. 1997) (act permitted by statute cannot be the basis of a violation of consumer protection act); *Hassler v. Sovereign Bank,* 374 Fed. Appx. 341, 343-44 (3rd Cir. 2010) (bank did not violate New Jersey Consumer Fraud Act when contract stated bank policy was to post checks in descending order).

Alternatively, Plaintiff's EFTA claim should be dismissed because it fails to meet the required pleading standards. The First Amended Complaint merely states that Advia violated the EFTA without offering any specifics as to how or why. Her recital of the statutory language does not satisfy the pleadings standards of an EFTA claim. *Webb*, *supra*, at \*6 (dismissing EFTA claim because Plaintiff failed to allege any specific violations of the statute). Therefore, it must be dismissed. *See Iqbal*, 556 U.S. at 678-79 (holding that "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s]" lacking "further factual enhancement" will not satisfy the requirements for initial pleadings); *see also 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

C. **ANY AMENDMENT BY PLAINTIFF WOULD BE FUTILE.**

Plaintiff should not be permitted to amend her complaint again. Leave to amend may be denied where amendment would be futile. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The gravamen of Plaintiff's First Amended Complaint is that Advia wrongfully used her initiated withdrawal requests rather than actual balance at the time of posting to calculate if she overdrew her account. As set forth above, Plaintiff's First Amended Complaint fails as a matter of law because the Contract states that Courtesy Pay is triggered when the transactions are initiated. The Contract prevents members from electronic check kiting. Any amendment to Plaintiff's First Amended Complaint would be futile as there is no set of facts she can allege that would demonstrate that Advia breached the Contract by measuring overdrafts when she initiated transactions as opposed to using the actual balance. Additionally, the Opt-In Notice (Exhibit 2)

11

contains all the information required and permitted by the EFTA Reg. E.  Any amendment to the First Amended Complaint is futile and it should therefore be dismissed with prejudice.

## V. CONCLUSION

For the reasons stated herein, Advia respectfully requests that this Court dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

Dated: March 11, 2016    By: */s/ Brandon J. Wilson*
    Brandon J. Wilson (P73042)
    450 West Fourth Street
    Royal Oak, MI 48067
    (248) 645-1483; (248) 645-1568 Fax
    bjw@h2law.com

    James A. Kohl, NV Bar No. 5692
    3800 Howard Hughes Pkwy., Suite 1000
    Las Vegas, NV 89169
    (702) 307-0840
    jak@h2law.com

    *Attorneys for Defendant Advia Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2016, I electronically filed *Defendant Advia Credit Union's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)* with the Clerk of the Court using the ECF system, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings via electronic notice of this filing.

Dated: March 11, 2016    */s/ Brandon J. Wilson*
    Brandon J. Wilson (P73042)

4828-2396-6255, v. 1