UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BECKY PINKSTON-POLING, individually,
and on behalf of all others similarly situated,

    Plaintiff,

vs.

ADVIA CREDIT UNION,

    Defendant.

Case No. 1:15-cv-1208
Hon. Gordon J. Quist

**<u>ORAL ARGUMENT REQUESTED</u>**

---

### DEFENDANT ADVIA CREDIT UNION'S REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Advia Credit Union, for the reasons more particularly stated in the Brief in Support of the Motion to Dismiss and this Reply to Opposition to Motion to Dismiss, moves to dismiss Plaintiff's First Amended Complaint on the grounds that the Complaint fails to state a claim upon which relief can be granted.

    Respectfully submitted,

    HOWARD & HOWARD ATTORNEYS PLLC

Dated: April 22, 2016

By: _/s/ Brandon J. Wilson_
    Brandon J. Wilson (P73042)
450 West Fourth Street
Royal Oak, MI 48067
(248) 645-1483; (248) 645-1568 Fax
bjw@h2law.com

James A. Kohl, NV Bar No. 5692
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
(702) 307-0840
jak@h2law.com

*Attorneys for Defendant Advia Credit Union*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

     A.    THE NATURE OF THE SUIT ................................................................ 1

     B.    THE PLEADINGS ................................................................................ 1

     C.    THE MOTION AND THE OPPOSITION ................................................ 2

II.    ARGUMENT ..................................................................................................... 3

     A.    THE COURT SHOULD STRIKE PLAINTIFF'S RESPONSE BECAUSE IT IS LATE. ................................................................ 3

     B.    PLAINTIFF'S CLAIM THAT THERE ARE TWO CONTRACTS IS WRONG AS A MATTER OF LAW .............................................................. 5

     C.    PLAINTIFF ASKS THE COURT TO CONSTRUE THE CONTRACT TO PERMIT HER TO COMMIT A FELONY ............................................. 8

     D.    THE CONTRACT LANGUAGE PLAINTIFF RELIES ON DOES NOT APPLY TO HER CHECKING ACCOUNT ............................................... 9

     E.    THE OPT-IN FORM IS SUBSTANTIALLY SIMILAR TO FORM A-9 .......... 11

     F.    *IN RE TD BANK, NA* IS NEITHER CONTROLLING NOR IS IT ON POINT ............... 14

III.    CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

16630 Southfield Ltd. P'ship v. Flagstar Bank, *F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) ......... 14

Bassett v. Nat'l Collegiate Athletic Assoc.,
   528 F.3d 426, 430 (6th Cir. 2008) ...................................................................... 1

Bassett v. Nat'l Collegiate Athletic Assoc., 528 F.3d 426, 430 (6th Cir. 2008)............................ 5

Bazinski v. JPMorgan Chase Bank, N.A.,
   2014 WL 1405253, *1–2 (E.D.Mich.2014)........................................................... 4

Bell Atl. Corp. v. Twombly,
   550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) ................................. 14

Charles J. Rogers, Inc. v. State, 36 Mich. App. 620, 626, 194 N.W.2d 203, 207 (1971)............... 6

Cudnik v. William Beaumont Hosp.,
   207 Mich. App. 378, 384, 525 N.W.2d 891, 894 (1994).................................................. 9

Detroit Trust Co. v. Struggles, 289 Mich. 595, 286 N.W. 844 (1939) ........................................... 7

Feldman v. Stein Building & Lumber Co.,
   6 Mich.App. 180, 184, 148 N.W.2d 544 (1967)................................................................. 9

Forge v. Smith, 458 Mich. 198, 207, 580 N.W.2d 876, 881 (Mi. 1998) ......................................... 7

Fredericks v. Mortgage Electronic Registration Systems, Inc., 2015 WL 3473972, *3
   (E.D.Mich.2015)...................................................................................................... 5

Hastings Mut. Ins. Co. v. Safety King, Inc.,
   286 Mich. App. 287, 297, 778 N.W.2d 275, 281 (2009)................................................. 8

Hopkins v. Saint Lucie Cnty. School Bd., 399 Fed.Appx. 563, 565 n. 1 (11th Cir.2010) ............. 4

Humphrey v. U.S. Att'y Gen.'s Office, 279 F. App'x. 328, 331 (6th Cir.2008)........................ 4, 5

In Re TD Bank, NA
   20015 WL 843979 ............................................................................................ 14

In Re TD Bank, *NA.* ................................................................................................ 15

Iqbal, 556 U.S. at 678-79 ............................................................................................ 14

Keeton v. Morningstar, Inc., 667 F.3d 877, 883 (7th Cir. 2012) (citing See Fed. R. Civ. P.
   6(b)(1)(B)) ...................................................................................................... 3

Knox v. Knox, 337 Mich. 109, 120, 59 N.W.2d 108 (1953) ............................................. 8

Lipton v. County of Orange, New York, 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) .................... 4

Lopez v. Bank of America, N.A., 920 F.Supp.2d 798 (W.D.Mich.2013) ............................... 3

Mekani v. Homecomings Fin., LLC,
    752 F.Supp.2d 785, 797 (E.D.Mich.2010) ...................................................... 4

Michigan Ass'n of Psychotherapy Clinics v. Blue Cross & Blue Shield of Michigan,
    101 Mich.App. 559, 573, 301 N.W.2d 33 (1980) ................................................ 9

Papasan v. Allain,
    478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) .................................. 14

Thielen v. GMAC Mortgage Corp.,
    671 F.Supp.2d 947, 957 (E.D.Mich.2009) ...................................................... 4

Thomas v. Leja, 187 Mich. App. 418, 422, 468 N.W.2d 58, 60 (1991) ................................ 7

TVT Records v. The Island Def Jam Music Group,
    412 F.3d 82, 89 (2d Cir. 2005 ................................................................ 8

Wheeler v. Long Beach Mortg. Co., 2015 WL 1637619, *2 (E.D.Mich.2015) ...................... 4, 5

Whittlesey v. Herbrand Company (1922), 217 Mich. 625, 187 N.W. 279 .............................. 6

Williams v. Chase Bank, 2015 WL 4600067, at *3-4 (E.D.Mich.,2015) ............................... 5

**Statutes**

12 C.F.R. § Pt. 1005 ............................................................................. 3

15 U.S.C. § 1693 ................................................................................. 2

MCL 750.131(1) ............................................................................... 2, 8

**Rules**

E.D. Mich. L.R. 7.1(c)(1) ........................................................................ 4

E.D. Mich. L.R. 7.1(c)(1) and 7.1(e)(1) (B) ...................................................... 5

E.D. Mich. LR 7.1(e)(1) (B) ...................................................................... 4

Local Rule 7.2(c) ................................................................................ 3

**Regulations**

12 C.F.R. § 1005.17 ................................................................................................ 2, 11, 14

12 C.F.R. Pt. 1005 .......................................................................................................... 11

12 C.F.R.1005.17 ............................................................................................................ 13

74 Fed. Reg. 59033 and 59035 ...................................................................................... 13

## BRIEF IN SUPPORT

## I.  INTRODUCTION

### A.  THE NATURE OF THE SUIT

This putative class action suit arises out of Plaintiff Becky Pinkston-Poling's admitted desire to be allowed to use the float on her debit card to charge items against her account for which she did not have sufficient funds on deposit. Plaintiff opened a checking account with Defendant Advia Credit Union ("Advia"). *See* Doc. No. 11 at ¶ 2. Pursuant to the terms of the Account Agreement (the "Contract"),[1] Plaintiff agreed to keep sufficient funds in the account to cover all items she purchased or paid for. In the event she failed to have sufficient funds in her account, Plaintiff agreed that Advia could, but was not obligated to, pay the overdraft and charge her a fee for the overdraft. In the alternative, Advia could have returned items due to Non-Sufficient Funds ("NSF"). Under either scenario, Plaintiff agreed she would be charged for purchasing items that exceed the amount of funds she had available to pay for the purchases.

### B.  THE PLEADINGS

Plaintiff filed suit on November 19, 2015 seeking damages for multiple causes of action. Doc. No. 1. Advia filed a motion to dismiss the Complaint on December 21, 2015. Doc. No. 5. On February 17, 2016, the parties filed a stipulation to allow the Plaintiff to file a first amended complaint. Doc. No. 8. The Court accepted the stipulation (Doc. No. 9) and Plaintiff filed her First Amended Complaint ("FAC") on February 19, 2016. Doc. No. 10.

---

1 The Contract is attached to the First Amended Complaint as Exhibit 1; it is also attached hereto for the Court's convenience. Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Bassett v. Nat'l Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

In the FAC, Plaintiff claimed damages for breached contract and violation of Regulation E, 12 C.F.R. § 1005.17 of The Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* ("Reg. E. Claim"). On March 3, 2016, Advia filed a Motion to Dismiss the FAC. Doc. No. 12. On April 9, 2016, Plaintiff filed her Response in opposition to Advia's Motion to Dismiss. Doc. No. 13.

### C. THE MOTION AND THE OPPOSITION

In the Motion to Dismiss, Advia argued that the FAC should be dismissed because it did not breach the contract and it had not violated Reg. E. Plaintiff's Opposition was not timely filed. In her Opposition, Plaintiff argued that she has two causes of action for breach of contract, one for the Contract and one for the Reg. E. Opt-In form because they are independent contracts. Under well settled Michigan law, there is only one contract before the Court.

Plaintiff argues that Advia breached the Contract when it charged her overdraft fees using her available balance (which debits charges made but not posted) as opposed to her actual or ledger balance that ignores purchases made but not yet posted. Plaintiff openly admits that she wants to be able to use the float on charges made with her debit card so that she can use *funds already committed to purchase other goods to purchase new goods*. Plaintiff asks this Court to interpret the Contract to allow her to electronically check kite, or ride the float. Such an interpretation requires this Court to interpret the contract in a manner that is illegal and against public policy. The Court should not enforce the agreement in such a manner nor should it condone such activity.

Plaintiff also alleges that Advia failed to comply with Reg. E. The Contract states that Plaintiff had to affirmatively opt-in to have overdrafts apply to ATM transactions. Advia's Opt-In Form contains all of the information required by 12 C.F.R. 1005.17 and it is virtually identical

with 12 C.F.R. § Pt. 1005 A–9—Model Consent Form for Overdraft Services. Because it complies with Reg. E, The Court should dismiss the Reg. E Claim with prejudice.

## II.    ARGUMENT

### A.    THE COURT SHOULD STRIKE PLAINTIFF'S RESPONSE BECAUSE IT IS LATE.

The Court should strike Plaintiff's unsupported response [Doc. No. 13] to Advia's motion to dismiss because Plaintiff filed it too late. Local Rule 7.2(c) requires a party opposing a motion to dismiss to respond within 28 days:

> (c) Briefing schedule - Any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials.

A party that fails to respond in the time allowed, must seek leave of court prior to filing a late response. *See e.g. Lopez v. Bank of America, N.A., 920 F.Supp.2d 798 (W.D.Mich.2013)*, (denying plaintiff's motion for leave to file a late response to the defendant's motion to dismiss, where the plaintiff refrained from filing a response to avoid unnecessarily escalating legal fees during attempts to settle.). Federal Rule of Civil Procedure 6(b) gives courts discretion (under certain exceptions) to grant extensions of time when deadlines are missed *because of excusable neglect.*" *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012) (citing See Fed. R. Civ. P. 6(b)(1)(B)). (emphasis added).

Plaintiff has now <u>twice</u> failed to respond to Advia's motion to dismiss her complaint. In the first instance, Advia filed its motion to dismiss on December 21, 2015. *See* Doc. No. 5. By rule, Plaintiff's response was due on January 18, 2016. Plaintiff neglected to file any response to Advia's motion. Instead, one month alter, on February 18, 2016, Plaintiff stipulated to dismiss four of the six counts in her Complaint. *See* Doc. Nos. 9 and 10.

Advia subsequently renewed its motion to dismiss on March 11, 2016. *See* Doc. No. 12. Plaintiff's response was due on or before April 8, 2016. Plaintiff filed her response late on April 9, 2016.[2] *See* Doc. No. 13. Plaintiff did not request leave of this Court to file her untimely response.

Plaintiff has not bothered to request leave of this Court to file her untimely response, or to attempt to explain any reasons for her continued tardiness. Because Plaintiff's response is late and was filed without leave of this Court, it should be stricken and disregarded.

In the context of a motion to dismiss, the failure to respond, is fatal to the Plaintiff's claims:

> Numerous cases have held that where a plaintiff fails to respond to a motion to dismiss, his or her claims are deemed abandoned. In *Bazinski v. JPMorgan Chase Bank, N.A.*, 2014 WL 1405253, *1–2 (E.D.Mich.2014) he Court, citing cases, stated: "Claims left to stand undefended against a motion to dismiss are deemed abandoned. *Mekani v. Homecomings Fin., LLC*, 752 F.Supp.2d 785, 797 (E.D.Mich.2010) (stating that where a plaintiff fails to respond to a motion to dismiss a claim, 'the Court assumes he concedes this point and abandons the claim'); *Thielen v. GMAC Mortgage Corp.*, 671 F.Supp.2d 947, 957 (E.D.Mich.2009) (same); See also, *Hopkins v. Saint Lucie Cnty. School Bd.*, 399 Fed.Appx. 563, 565 n. 1 (11th Cir.2010) ('[The plaintiff's] argument that he should have been granted leave to amend his complaint was abandoned when he failed to raise it in opposing the defendants' motion to dismiss or in responding to the magistrate judge's recommendation of dismissal.'); *Lipton v. County of Orange, New York*, 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) ('This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.')." *4 See also *Wheeler v. Long Beach Mortg. Co.*, 2015 WL 1637619, *2 (E.D.Mich.2015) ("The fact that Plaintiffs have failed to respond to the Motion to Dismiss means that the Court could simply grant the motion as unopposed"); *Fredericks v. Mortgage Electronic Registration Systems, Inc.*, 2015 WL 3473972, *3 (E.D.Mich.2015) ("Plaintiffs failure to timely respond to Defendants' Motion to Dismiss, as required by E.D. Mich. L.R. 7.1(c)(1) and 7.1(e)(1) (B), amounts to a waiver of any argument in opposition to Defendants' motion") (citing *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x. 328, 331 (6th Cir.2008).

---

2 Plaintiff falsely states in Docket No. 14 that she filed her response to Advia's motion to dismiss on April 8, 2016.

*Williams v. Chase Bank*, 2015 WL 4600067, at *3-4 (E.D.Mich., 2015). *See also Wheeler v. Long Beach Mortg. Co.*, 2015 WL 1637619, *2 (E.D.Mich.2015) ("The fact that Plaintiffs have failed to respond to the Motion to Dismiss means that the Court could simply grant the motion as unopposed"); *Fredericks v. Mortgage Electronic Registration Systems, Inc.*, 2015 WL 3473972, *3 (E.D.Mich.2015) ("Plaintiffs failure to timely respond to Defendants' Motion to Dismiss, as required by E.D. Mich. L.R. 7.1(c)(1) and 7.1(e)(1) (B), amounts to a waiver of any argument in opposition to Defendants' motion") (citing *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x. 328, 331 (6th Cir.2008).

Because Plaintiff has failed to respond (her late response should be stricken), she has waived her right argue in opposition to Advia's motion and the Court should grant Advia's motion as unopposed.

**B.    PLAINTIFF'S CLAIM THAT THERE ARE TWO CONTRACTS IS WRONG AS A MATTER OF LAW.**

In the Opposition Brief, Plaintiff argues that there are *two* contracts at issue, the Account Agreement ("Contract") and the Reg. E Disclosure form ("Opt-In Form").[3] Plaintiff's argument is wrong as a matter of law. There is only one contract, the Contract. The Opt-In Form is a *form* that account holders fill out and return to Advia if they elect to have Courtesy Pay (overdraft protection) applied to debit card and/or ATM transactions under the Contract. The Contract states:

> Courtesy Pay is a discretionary service that allows us to pay charges against our member's checking account even if it causes the account to become overdrawn.

---

3 The Contract and Opt-In Form are attached to the First Amended Complaint as Exhibits 1 and 2 respectively; they are also attached hereto for the Court's convenience. Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. Bassett v. Nat'l Collegiate Athletic Assoc., 528 F.3d 426, 430 (6th Cir. 2008).

* * *

> Whether we pay or return an item, your account will be assessed an Overdraft fee. This non-contractual courtesy of paying overdrafts requires no accountholder action. It is not a loan. No additional agreements need to be signed, and it costs nothing unless the privilege is used – by initiating checks, electronic fund transfers, or other payment or withdrawal requests for more than is on deposit in the account. *Certain transactions including ATM and one-time debit require additional opt-in pursuant to federal law.* (Emphasis added)

See Exhibit 1 at p. 5. "It is well-settled law in Michigan that, where a written contract refers to another instrument and makes the terms of the other instrument a part of the written agreement, the separate instruments are construed together as the agreement of the parties." *Charles J. Rogers, Inc. v. State*, 36 Mich. App. 620, 626, 194 N.W.2d 203, 207 (1971) (*citing Whittlesey v. Herbrand Company* (1922), 217 Mich. 625, 187 N.W. 279). The Opt-In Form is the form that account holders execute if they want overdraft protection to apply to ATM and debit card transactions. The Opt-In Form states:

---

### WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES

An <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but we have the option to pay it anyway. We can cover your overdrafts in two different ways:

1. Use the <u>standard overdraft practices</u> that come with your account; or

2. Offer <u>overdraft protection plans</u>, such as a link to a savings account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans.

This notice explains our <u>standard overdraft practices</u>.

**What are the <u>standard overdraft practices</u> that come with my account?**

We <u>do</u> authorize and pay overdrafts for the following types of transactions:

- Checks and other transactions made using your checking account number
- Automatic bill payments

After August 15, 2010 we <u>will not</u> authorize and pay overdrafts for the following types of transactions unless you ask us to (see below):

- ATM transactions
- Everyday debit card transactions

We pay overdrafts at our discretion, which means we <u>do not guarantee</u> that we will always authorize and pay any type of transaction.

---

6

If we do <u>not</u> authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if Advia Credit Union pays my overdraft?**

Under our standard overdraft practices:

- We will charge you a fee of up to $32 each time we pay an overdraft.
- There is <u>no limit</u> on the total fees we can charge you for overdrawing your account

**What if I want Advia Credit Union to authorize and pay overdrafts on my ATM and everyday debit card transactions?**

If you want us to authorize and pay overdrafts on ATM and everyday debit card transactions after August 15, 2010, please fill out below.

_____ I want Advia Credit Union to authorize and pay overdrafts on my ATM and everyday debit card transactions.

Printed Name: _____
Date: _____
Account Number(s): _____

See Exhibit 2. The Opt-In Form is not a separate contract between Plaintiff and Advia. It is a method specified in the Contract for her to activate the Courtesy Pay feature for her ATM and debit card transactions. The contract formalities associated with Contracts[4] are not present in the Opt-In Form. It is only when the Opt-In Form is read together with the Contract that the elements of a contract are present. "Where one writing references another instrument for additional contract terms, the two writings should be read together." *Forge v. Smith*, 458 Mich. 198, 207, 580 N.W.2d 876, 881 (Mi. 1998). This principle applies even though the writings "were executed on different dates and were not between all the same parties." *TVT Records v. The Island Def Jam Music*

---

[4] "In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich. App. 418, 422, 468 N.W.2d 58, 60 (1991) (citing *Detroit Trust Co. v. Struggles*, 289 Mich. 595, 286 N.W. 844 (1939)).

*Group*, 412 F.3d 82, 89 (2d Cir. 2005) . Although there are two writings, there is only one contract between Plaintiff and Advia. Plaintiff's claim for breach of contract based on the Opt-In Agreement fails as a matter of law.

## C. PLAINTIFF ASKS THE COURT TO CONSTRUE THE CONTRACT TO PERMIT HER TO COMMIT A FELONY.

It is well settled that "contracts are to be interpreted to avoid absurd or unreasonable conditions and results." *Hastings Mut. Ins. Co. v. Safety King, Inc.*, 286 Mich. App. 287, 297, 778 N.W.2d 275, 281 (2009) (*citing Knox v. Knox*, 337 Mich. 109, 120, 59 N.W.2d 108 (1953)). Plaintiff argues that in her Opposition Brief, that Advia asked the Court to construe the Contract in an absurd manner. Ironically, it the contrary is true; Plaintiff's interpretation of the Contract is patently absurd. Incredibly, Plaintiff argues:

> [N]o financial institution is privy to the moment a check is written nor would a financial institution ever impose an overdraft fee at the moment a check is written even if it were privy to all such moments since the check has yet to be posted and funds from the writer's account has yet to be withdrawn. *Advia's attempt to draw a distinction between "initiation" and "presenting" is not only entirely irrelevant to plaintiff's breach of contract claim, it is also unreasonable.* (Emphasis added)

Opposition p. 13. Plaintiff's interpretation of the Contract recklessly advocates for the Court to sanction criminal activity that undermines the stability of our financial system. The practice of deliberately writing and issuing checks for which funds are not available on deposit is known as check kiting or riding the float and the practice is illegal almost everywhere. In Michigan, it is a felony to write checks or draw credit on an account when there are insufficient funds in the account. MCL 750.131(1). Plaintiff's argument is that because Advia and other financial institutions did not assess overdraft fees at the moment check writers passed a bad check du to their being unaware of the crime, Advia is prohibited from assessing an overdraft fee when it learns that Plaintiff is passing a bad debit card transaction. The Plaintiff is expressly asking the

Court to construe the Contract to allow her to use up her entire account balance, then, because of the historical delay associated in the processing of checking accounts, she be allowed to charge additional items against the account, *even though she knows that she has already committed the entire balance of the account for a prior purchase.* In Michigan, parties are free to enter into contracts "provided that the particular contract does not violate the law or contravene public policy." *Cudnik v. William Beaumont Hosp.*, 207 Mich. App. 378, 384, 525 N.W.2d 891, 894 (1994) (*citing Feldman v. Stein Building & Lumber Co.*, 6 Mich.App. 180, 184, 148 N.W.2d 544 (1967); *Michigan Ass'n of Psychotherapy Clinics v. Blue Cross & Blue Shield of Michigan*, 101 Mich.App. 559, 573, 301 N.W.2d 33 (1980)). Plaintiff's proposed contract interpretation violates MCL 750.131(1). The Court cannot construe the Contract in the manner Plaintiff urges because it would allow Plaintiff to commit an illegal activity and to violate public policy. Plaintiff's claim for breach of contract fails as a matter of law. The Court cannot condone or enforce a contract for illegal activity. The Court should therefore dismiss her breach of contract claim with prejudice, as amendment is futile.

### D. THE "BALANCE" LANGUAGE PLAINTIFF RELIES ON DOES NOT APPLY TO HER CHECKING ACCOUNT.

The Contract that Advia and Plaintiff entered into is Advia's standard account agreement. The Contract contains the terms and conditions of numerous types of accounts offered by Advia. Plaintiff's account at issue is her checking account. *See* FAC. The language quoted by Plaintiff in her Opposition does not apply to how her checking account balance would be calculated by Advia. First, Plaintiff did not open a Youth Savings account, thus the language she quotes from the Youth Savings Account disclosure is irrelevant. The dividends language quoted by Plaintiff does not support her contention that the contract prohibits the use of available balance. When read in its entirety the meaning is far different that the meaning Plaintiff gives it.

> We compound your dividends, even though the law doesn't require that. Compounding is more favorable to you, because once dividends have been earned by your account they are added to the balance on which you will continue to earn dividends. Because we compound dividends, the actual yield on your account will be somewhat higher than the annual dividend rate.

Exhibit 1, p. 7. That language has nothing to do with how the balance is calculated for overdrafts.

Thus, it is of no support to Plaintiff. Similarly, the quoted language regarding survivor's benefits

does not address how the account balance is calculated for overdrafts. The full text of that portion

of the contract reads as follows:

> These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records... Joint Account – With Survivorship (And Not as Tenants In Common) is an account in the name of two or more persons. Each of you intends that upon your death the balance in the account will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common. If beneficiaries are named, those beneficiaries acquire the right to withdraw only if: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive, the death of all persons creating the account, such beneficiaries will own this account in equal shares, without right of survivorship.

That language describes what will happen to the funds in the event that any account at Advia is

held as a joint account with rights of survivorship. It has nothing to do with how the account

balance will be calculated for overdrafts. Similarly, the good standing quote provided by Plaintiff,

when read in its entirety, does not support her position.

> If the account has been maintained in good standing, defined as: (a) Making regular deposits sufficient to cover transactions; (b) Bringing the account to a positive balance at least once every thirty days or less, and: (c) There are no legal orders outstanding on your account, we may, at our sole discretion, pay overdrafts, including our normal Courtesy Pay charge(s).

The good standing language describes the conditions precedent for United to apply Courtesy Pay

to a checking account. It does not qualify or modify how the account balance is calculated.

The partial quotes from the Contract that the Plaintiff cited to the Court do not support an interpretation that her account balance should be calculated in a manner that allows plaintiff to pass bad debit card transactions. Even it the Contract contained such language; it would be unenforceable as a contract for illegal activity and contrary to public policy.

**E.      THE OPT-IN FORM IS SUBSTANTIALLY SIMILAR TO FORM A-9.**

Plaintiff's Reg. E. Claim is also fatally flawed as a matter of law. Plaintiff argues at that her Reg. E. Claim should survive because the Opt-In Agreement did not include information that is *not* required under the Electronic Funds Transfer Act ("EFTA"). Title 12 of the Code of Federal Regulations ("C.F.R.") governs banks and banking transactions. The EFTA is implemented in part, through Regulation E. Regulation E, 12 C.F.R. 1005.17(d), governs what Advia could and could not say in the Opt-In Notice. The EFTA promulgated a model form for financial institutions to us for opt-in notices *See* 12 C.F.R. Pt. 1005, Appendix A To Part 1005—Model Disclosure Clauses And Forms contains the model form for A-9—Model Consent Form for Overdraft Services ("A-9 Form"). The Opt-In Form was required to be substantially similar to the A-9 Form. 12 C.F.R. 1005.17. The text of the A-9 Form and the Opt-In Form are set side by side in the chart below.

| 12 C.F.R. § Pt. 1005 A–9—Model Consent Form for Overdraft Services | Opt-In Agreement |
|---|---|
| **What You Need to Know about Overdrafts and Overdraft Fees** | **WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES** |
| An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways: | An <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but we have the option to pay it anyway. We can cover your overdrafts in two different ways: |
| 1. We have <u>standard overdraft practices</u> that come with your account. | 1. Use <u>the standard overdraft practices</u> that come with your account; or |
| 2. We also offer <u>overdraft protection plans</u>, such as a link to a savings account, which may be less expensive | 2. Offer <u>overdraft protection plans</u>, such as a link to a savings account, which may be less expensive |

than our standard overdraft practices. To learn more, ask us about these plans.

This notice explains our standard overdraft practices.

**What are the <u>standard overdraft practices</u> that come with my account?**

We <u>do</u> authorize and pay overdrafts for the following types of transactions:

*   Checks and other transactions made using your checking account number
*   Automatic bill payments

We <u>do not</u> authorize and pay overdrafts for the following types of transactions unless you ask us to (see below):

*   ATM transactions
*   Everyday debit card transactions

We pay overdrafts at our discretion, which means we <u>do not guarantee</u> that we will always authorize and pay any type of transaction.

If we do <u>not</u> authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if [Institution Name] pays my overdraft?**

Under our standard overdraft practices:
*   We will charge you a fee of up to **$30** each time we pay an overdraft.
*   Also, if your account is overdrawn for 5 or more consecutive business days, we will charge an additional $5 per day.
*   There is no limit on the total fees we can charge you for overdrawing your account.

**What if I want [Institution Name] to authorize and pay overdrafts on my ATM and everyday debit card transactions?**

If you also want us to authorize and pay overdrafts on ATM and everyday debit card transactions, call [telephone number], visit [Web site], or complete the form below and [present it at a branch][mail it to:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

---

than our standard overdraft practices.  To learn more, ask us about these plans.

This notice explains our standard overdraft practices.

**What are the <u>standard overdraft practices</u> that come with my account?**

We <u>do</u> authorize and pay overdrafts for the following types of transactions:

*   Checks and other transactions made using your checking account number
*   Automatic bill payments

After August 15, 2010 we <u>will not</u> authorize and pay overdrafts for the following types of transactions unless you ask us to (see below):

*   ATM transactions
*   Everyday debit card transactions

We pay overdrafts at our discretion, which means we <u>do not guarantee</u> that we will always authorize and pay any type of transaction.

If we do <u>not</u> authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if Advia Credit Union pays my overdraft?**

Under our standard overdraft practices:
*   We will charge you a fee of up to $32 each time we pay an overdraft.
*   There is no limit on the total fees we can charge you for overdrawing your account

**What if I want Advia Credit Union to authorize and pay overdrafts on my ATM and everyday debit card transactions?**

If you want us to authorize and pay overdrafts on ATM and everyday debit card transactions after August 15, 2010, please fill out below.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| _____ I do not want [Institution Name] to authorize and pay overdrafts on my ATM and everyday debit card transactions. | _____ I want Advia Credit Union to authorize and pay overdrafts on my ATM and everyday debit card transactions. |
| _____ I want [Institution Name] to authorize and pay overdrafts on my ATM and everyday debit card transactions.<br>Printed Name: _____<br>Date: _____<br>[Account Number]: _____ ] | Printed Name: _____<br>Date:_____<br>Account<br>Number(s):_____ |

12 C.F.R.1005.17, 74 Fed. Reg. 59033 and 59035 permit Advia to satisfy its disclosure requirements by using the A-9 Form, or a form that is substantially similar to the A-9 Form. Reviewing the A-9 Form and the Opt-In Form side by side reveals that the A-9 Form and Opt-In Form are substantially similar. Advia complied with the requirements of Reg. E. of the EFTA.

Notwithstanding the fact that the A-9 Form and the Opt-In Form are virtually identical, and the fact that Plaintiff admits that Reg. E. identifies what must be included in the Opt-In Form, Plaintiff argues that Advia is liable to her for violating Reg. E because there are requirements above and beyond 12 C.F.R.1005.17, 74 Fed. Reg. 59033 and 59035. Plaintiff advances Plaintiff does not point the Court to any legal authority that supports her contention that the Opt-In Form had to contain more information than 12 C.F.R.1005.17, 74 Fed. Reg. 59033 and 59035. Thus her claim is barred. Similarly, Plaintiff's claim that the Opt-In Notice requires Advia to allow her to pass bad debit card transactions is also barred. For brevity, the arguments and authorities cited above set forth above in Section II(C) are incorporated by reference on this issue.

Plaintiff's argument regarding the Reg. E Claim is nothing more than a series of labels and conclusions. Plaintiff couches her legal conclusions as facts and asks that the Court not dismiss the Reg. E Claim. A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955,

1964-65, 167 L. Ed. 2d 929 (2007)(citations and internal punctuation omitted). When presented with "a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'". *Id. quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

Under Reg. E Advia needed to substantially comply with Form A-9. Advia's Opt-In Form contains all of the information required by 12 C.F.R. 1005.17. The Opt-In Notice satisfies the statute's requirements. *See* Doc. No. 11 at p. 33, and attached as Exhibit 2; *See* Ex. 2. Plaintiff's claim that Reg. E. required additional disclosure is merely a legal conclusion, unsupported by statute or case law. Legal conclusions are not sufficient to ward off a motion to dismiss. *Id.* The Reg. E Claim should be dismissed with prejudice. *See Iqbal*, 556 U.S. at 678-79 (holding that "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s]" lacking "further factual enhancement" will not satisfy the requirements for initial pleadings); *see also 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) Plaintiff's second cause of action should be dismissed with Prejudice as amendment is futile.

**F.    *IN RE TD BANK, NA* IS NEITHER CONTROLLING NOR IS IT ON POINT.**

Plaintiff argues that the denial of a motion to dismiss as set forth in *In Re TD Bank, NA* 20015 WL 843979 is reason for this Court not to grant Advia's motion. The plaintiffs in TD Bank did not ask the court to construe the contract in an illegal manner. Had they done so, under well settled law, the court would have refused to do so. Indeed the Court noted that the Defendant's arguments were logical, and that the Plaintiff was selectively quoting portions of the contract (as Plaintiff has done here). However, given the standard of review, it had to allow the claim to proceed. Id. at *19. The opinion is not from this District, nor is it from this Circuit. As such, it

is not binding on the Court. Given that Plaintiff argues that she should be permitted to pass bad debit card transactions because banks could not historically tell when people passed bad checks, this Court should distinguish *In Re TD Bank, NA.*

Plaintiff's First Amended Complaint fails as a matter of law because the Contract cannot be construed in a manner that violates Michigan's criminal statutes nor can it be construed in a manner that allows it to be construed in violation of public policy. Plaintiff openly asserts that the Court should ignore well settled precedent and construe the Contract to allow her to illegally pass bad debit card transactions. Any amendment to Plaintiff's First Amended Complaint would be futile as there is no set of facts she can allege that would allow her to contract with Advia to pass bad debit card transactions. Additionally, the Opt-In Notice (Exhibit 2) contains all the information required and permitted by the EFTA Reg. E. Thus, there is no cause of action for breach of the statute. Any amendment to the First Amended Complaint is futile and it should be dismissed with prejudice.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

### III.  CONCLUSION

For the reasons stated herein, Advia respectfully requests that this Court dismiss Plaintiff's

First Amended Complaint with prejudice.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

Dated: April 22, 2016         By: /s/ *James A. Kohl*
                                   Brandon J. Wilson (P73042)
                                   450 West Fourth Street
                                   Royal Oak, MI 48067
                                   (248) 645-1483; (248) 645-1568 Fax
                                   bjw@h2law.com

                                   James A. Kohl, NV Bar No. 5692
                                   3800 Howard Hughes Pkwy., Suite 1000
                                   Las Vegas, NV 89169
                                   (702) 307-0840
                                   jak@h2law.com

                                   *Attorneys for Defendant Advia Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2016, I electronically filed *DEFENDANT ADVIA CREDIT UNION'S REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)* with the Clerk of the Court using the ECF system, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings via electronic notice of this filing.

Dated: April 22, 2016                    */s/ Brandon J. Wilson*
                                         Brandon J. Wilson (P73042)

4817-8429-2728 v.1