IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

BECKY PINKSTON-POLING,

     Plaintiff,               No.  1:15cv1208

   vs.

ADVIA CREDIT UNION,

     Defendant.


Before:

                     THE HONORABLE GORDON QUIST,
                     U.S. District Judge
                     Grand Rapids, Michigan
                     October 5, 2016
                     Motion to Dismiss Proceedings

APPEARANCES:
              Philip J. Goodman, P.C.
              MR. PHILIP J. GOODMAN
              280 N. Old Woodward Avenue
              Suite 407
              Birmingham, MI 48009
              248-647-9300

              McCune Wright LLP
               MR. RICHARD DALE MCCUNE, JR.
              2068 Orange Tree Lane
              Suite 216
               Redlands, CA 92374
              909-557-1250

              Michael B. Serling, P.C.
               MR. ERIC B. ABRAMSON
              280 N. Old Woodward
               Suite 406
              Birmingham, MI 48009
              248-647-6966
                     On behalf of the Plaintiff;

```
 1              Howard & Howard
                MR. BRANDON JOHN WILSON
 2              450 W. Fourth Street
                Royal Oak, MI  48067
 3              248-723-0341
                        On behalf of the Defendant.
 4

 5

 6     TRANSCRIBED BY:  MS. KATHY J. ANDERSON, RPR, FCRR

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                October 5, 2016

                         PROCEEDINGS, 11:00 a.m.

        THE COURT:  Welcome to the United States District
Court for the Western District of Michigan.  We're here in the
case of Becky Pinkston-Poling against Advia Credit Union,
motion to dismiss filed by defendant.  Can I have the
appearance of counsel, please.

        MR. MCCUNE:  Good morning again, Your Honor.  Richard
McCune for the plaintiff.

        THE COURT:  Okay.

        MR. WILSON:  Brandon Wilson appearing on behalf of
Advia Credit Union.

        THE COURT:  I'm sorry.

        MR. GOODMAN:  Philip Goodman for plaintiff.

        THE COURT:  Brandon Wilson?

        MR. WILSON:  Yes, sorry, Your Honor.

        THE COURT:  Okay.  You may all be seated.  We're here
on the oral argument on defendant's motion to dismiss.  As an
aside, I said to my law clerk walking out here you must have
drawn the least competent judge on these issues in the Western
District of Michigan.  You're looking at a judge whose wife
took away from him check writing privileges 50 years ago.

        But anyway, here we are.  I did my best to understand
it.  I think I do understand it.  And nothing to do with
anything that happens in my family, of course.  But let me just

1   run through some things because I wanted to make sure I

2   understand what everybody is talking about.

3           And it starts out with definitions.  One is the ledger

4   balance.  The ledger balance as I understand it is the term

5   that the plaintiff uses to refer to the actual balance in the

6   checking account, unreduced by pending charges.  Is that

7   basically correct?

8           MR. MCCUNE:  Yes, Your Honor, it is, without pending

9   charges as well as checks or deposits that haven't cleared yet.

10          THE COURT:  Non-cleared items.

11          MR. MCCUNE:  So it's both the debit holds as well as

12  the deposit holds.

13          THE COURT:  All right.  Well, the example is that if a

14  customer has a hundred dollars in their account but there is a

15  pending debit of $20 that's not been posted to the account then

16  the ledger balance would be a hundred dollars.  In other words,

17  it hasn't cleared, the items --  it's the items that have not

18  cleared that makes the difference that we are talking about.

19          MR. MCCUNE:  Right.  They have not come in for payment

20  yet.

21          THE COURT:  All right.  And the actual balance, how

22  does --  how is that distinguished from the ledger balance?

23          MR. MCCUNE:  The actual balance and the ledger balance

24  in the banking credit union world are used interchangeably.

25          THE COURT:  Okay.  I've got that too.  Then the

available balance is the ledger or the actual balance minus the
pending charges, for example, use of the cash card, checks
outstanding, things like that.

MR. MCCUNE:  Things that haven't --

THE COURT:  The bank would show on some record but
hadn't cleared on their own books yet.

MR. MCCUNE:  Well, actually haven't been paid yet.

THE COURT:  Haven't been paid yet.

MR. MCCUNE:  So for debit card, how it works is the
debit card, if I go to Wal-Mart and I put my debit card and say
I want a ten dollar charge, it goes through the computer system
to Advia Credit Union which authorizes it or declines it.

THE COURT:  Okay.

MR. MCCUNE:  And then a couple days later it comes in
for payment.

So it's the coming in for the payment part when Advia
actually pays the transaction is when it reduces the actual
ledger balance.

THE COURT:  All right.  Then you're saying that what
this particular credit union does, Advia does, is that it takes
into account those things that have not cleared in determining
whether there's an overdraft.

MR. MCCUNE:  Right.  It takes into account those that
have not yet paid.

THE COURT:  Not yet paid.  Okay.  I use the word --

1    is there a difference between paying and clearing?

2         MR. MCCUNE:  There is not except for the language that

3    they use in their contract.  So the contract says an overdraft

4    is when there is not sufficient funds or money to cover or pay

5    the transaction.

6         THE COURT:  All right.

7         MR. MCCUNE:  So I think it's an important distinction

8    maybe for the contract language, but it has the same meaning.

9         THE COURT:  Okay.

10        MR. WILSON:  Your Honor.

11        THE COURT:  You'll get a chance.  Let me just go there

12   with him a minute and you'll get more than enough time.

13        All right.  Then you argue on behalf of the plaintiff

14   that Advia should have used her ledger actual balance, we went

15   through that, and she would not have been overdrawn and

16   wouldn't have been hit with those fees that you talk about in

17   your complaint.

18        MR. MCCUNE:  Right.  If I could give you an example.

19        THE COURT:  Yeah, go ahead.  Don't worry.

20        MR. MCCUNE:  So for just simplicity sake, let's assume

21   that I had $10 in my account, and I go and buy a Starbucks this

22   morning for 4 bucks.  And then my wife using her card goes to

23   McDonalds at lunch for $8.  So I have a 4 there and an $8

24   equals 12.  Those are both taken away from the available

25   balance.  So tomorrow when those come in, both of them become

overdrafts. Even though neither of those transactions are greater than the, than the balance. So it wouldn't matter what order they came in. If the $4 one came in first, the $8 one came in first, it doesn't matter. But what this process does is turn what should have been one overdraft fee, we are not disputing that, one overdraft fee into two overdraft fees.

THE COURT: Okay. Okay. Good. Okay. You may be seated. All right. Mr. Wilson, where was he wrong and move forward with your motion.

MR. WILSON: I think he is wrong first and foremost --

THE COURT: I'm just talking about definitions now.

MR. WILSON: Sure. Definitions, I agree with his definition as to what the actual or ledger balance is. The only thing I want to make clear is that when we talk about available balance and the transaction has been authorized, so, let's give the example, let's say the plaintiff goes and buys groceries. She swipes her Advia debit card, the transaction is approved by Advia because there's money in the account, but then Advia becomes responsible for transferring those funds to the merchant, let's say the grocery store. And so it's not fair to say that essentially Advia turns a blind eye to these transactions which are initiated, they are approved and Advia has to pay for, but because of a delay in the transfer of electronic funds in this day and age, that somehow we can't take that into consideration when determining her account

balance.

And so I don't know if I have --

THE COURT:  They didn't say that -- their complaint is not quite that you cannot do it.  What I read their complaint to say is that you haven't done it.  In other words, the agreements don't claim, the agreements don't give you the right to do that.  That's the way I understand it.

MR. WILSON:  I agree with that.

THE COURT:  Am I right or wrong?

MR. MCCUNE:  You are right, Your Honor.  We are not challenging the practices themselves.

THE COURT:  Right.  That doesn't violate anything. It's just that they have an agreement and you're saying they violated the agreement by doing that.

MR. MCCUNE:  Their only right to an overdraft fee is from that contract.

THE COURT:  Right.

MR. MCCUNE:  They can't just pull money out of my account.

THE COURT:  Right.

MR. MCCUNE:  So it comes from the contract.

THE COURT:  Right, that's the way I understand it. Okay.

MR. WILSON:  And, Your Honor, if I could speak to that point.  The contract does allow us to do that.  There's two

different places, they are both on, if you look at docket
number 11 which is the first amended complaint, on page 20
there is a clause that discusses the overdraft fee program.
And in two different places it says in different words when the
customer, the member can be charged an overdraft.  The first is
it says when any item is presented.  So I've swiped my debit
card, I have made an ATM withdrawal, if your account does not
have sufficient funds -- so let's go back to my example that I
just talked about.  Suppose that plaintiff goes to the grocery
store, she has a hundred dollars in her account, she uses her
Advia debit card and she buys $100 worth of groceries.
Transaction is approved, plaintiff walks out of the store with
her groceries, and Advia is on the hook for transferring the
money to the merchant.  Let's suppose then she leaves the
grocery store and she goes across the street and buys $50 worth
of gas.  At that point when she swipes her Advia debit card,
there is no reasonable person in the world that would say, you
know what, I have sufficient funds in my account.  Anyone in
the world, Your Honor, using common sense knows I don't have
sufficient funds because I just bought a hundred dollars worth
of groceries across the street.  And so the language is
abundantly clear and when it's viewed in light of what --

        THE COURT:  The specific language you're talking
about -- I have written some language out here and under the
heading payment order of items, I have, quote, "If an item is

presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item." Then in another paragraph, Courtesy Pay, discretionary service. Et cetera. Those are the provisions you're talking about?

MR. WILSON: Yes, I'm specifically looking at, again it's page 20 but it's under the heading that "Overdraft Courtesy Pay Plan. And in that first paragraph, Your Honor --

THE COURT: Here we are.

MR. WILSON: It starts, "...To pay any item presented for payment if your account does not contain sufficient funds." Then it goes on to explain basically the standing which your account has to have. But then in the next paragraph, so this would be in the right-hand column in that same section, it says "by initiating checks, electronic fund transfers, or other payment or withdrawal requests for more than is on deposit in the account."

And so what the plaintiff is trying to say is, well, credit union, what that means is you have to essentially ignore any of my electronic withdrawals or in this case debit card purchases. You have to put your blinders on until 24 to 48 hours when those charges actually post and the money is physically removed from the account.

The problem with that, Your Honor, is that it produces an absolutely absurd result where someone like the plaintiff

can start the day with a hundred dollars in her account and essentially go from merchant to merchant to merchant and make purchases which exceed her account balance and somehow Advia is supposed to sit there and say, well, this is not technically an overdraft yet, although it will be, we are just waiting for the funds to transfer.

It doesn't make, it doesn't pass the common sense test, Your Honor.

And the -- the other thing I'll say is, yes, you asked Mr. McCune about the definition of ledger balance or actual balance. I don't see those words anywhere in this document. I don't see any description of that definition that he's talking about. And so I believe the case law suggests that the Court is going, is to interpret the actual words used in the document, and the Court is to do that in a manner which doesn't produce absurd results.

THE COURT: Talking about how courts interpret it. Nothing binding on me yet. But there was that case, was it Nevada I think?

MR. WILSON: Yes.

THE COURT: And how would you distinguish that?

MR. WILSON: I would distinguish that for a couple of reasons: First, the language used in the account agreements is different. Mr. McCune has given you I think now three cases from different jurisdictions.

1    THE COURT:  One, one federal court from Washington,

2    one state court from Washington, then Nevada.

3    MR. WILSON:  Correct.  And so the language actually

4    used in those documents is different than what we have here.

5    What I just read --

6    THE COURT:  Okay.  Distinguish them for me then.

7    MR. WILSON:  Well, I would distinguish it because, for

8    example, I believe it was the Wodja case, Wodja actually used

9    the word "available balance."  And somehow, I mean I disagree

10   with the judge in that case, they use the actual language, the

11   available balance language, and the courts in those cases have

12   said, essentially, we think there's potentially an ambiguity

13   here, and so this is not something we're going to decide on

14   12(b)(6).

15   The other thing I'll say is, and I reviewed the

16   pleadings from those cases, I didn't see any arguments, I

17   didn't see any substantive opinions from the courts in those

18   cases which address this, this real life situation in which a

19   member knows they have a certain amount of money in the account

20   and are then permitted to go around and essential rack up

21   charges that the credit union is somehow supposed to sit back

22   and watch it.  And more importantly, Your Honor, if I go and I

23   spend a hundred dollars, my last hundred dollars on groceries,

24   I know everyone knows at that point that I've spent my last

25   hundred dollars.  And so for me to then go across the street

1    and initiate a charge for $50 and not expect an overdraft fee

2    is simply ludicrous.  It doesn't make any sense.

3            And there is nothing binding on this Court, as Your

4    Honor recognizes.  The cases which Mr. McCune cites are all

5    from different jurisdictions.  And essentially in each of those

6    cases the judges have said, you know, we're, we are confused or

7    we are not quite sure what the words mean.  The language that

8    I've cited to the Court on page 20 in docket number 11 I

9    believe is completely dispositive of this case.

10           THE COURT:  I might have it here right in front of me.

11           MR. WILSON:  So it's the two clauses again.  We say

12   you're going to get an overdraft fee when you present an item

13   for payment if your account does not contain sufficient funds.

14   Then --

15           THE COURT:  Define account, does it --

16           MR. WILSON:  Pardon, Your Honor?

17           THE COURT:  -- does it define account?  In other

18   words, what is included in the account?  You have, you could

19   have deposit accounts, you can have checking accounts, you can

20   have pending transactions.  If you don't think it's important

21   you can move on.

22           MR. WILSON:  I don't think the distinction is

23   critical.  The point is that the plaintiff is asking the Court

24   to basically ignore a transaction unless and until the funds

25   are physically removed, although, the credit union is on the

1    hook for paying the money to the merchant.  It for one doesn't

2    seem fair, and, two, again it doesn't make sense.

3           There's also the language that says you're going to be

4    charged an overdraft fee by initiating checks, initiating

5    electronic fund transfers or other payment or withdrawal

6    requests.  So in other words, swiping my card when I initiate

7    for more than is on deposit in the account.

8           So I don't, I don't read that and say that that means

9    that the credit union has to ignore transactions which have

10   been approved but simply are just waiting for the funds to be

11   removed because of delays in the electronic transfer of funds.

12   So I think based on this language the Court can and should

13   dismiss that count.

14           Does the Court have any other questions on that issue?

15           THE COURT:  I'm sure I do.  Just hold on a minute,

16   though, if you would, please.  Well, okay.  Taking a look at

17   the Gunter case, if there's an ambiguity as to what funds

18   they're talking about in a particular account, as I read

19   Gunter, the Court held that an account agreement was ambiguous

20   as to whether the actual balance or the available balance

21   should be used to determine the overdraft status.  And

22   therefore stuck the credit union with potential liability.

23           MR. WILSON:  I believe that order is simply a motion

24   denying a 12(b)(6), same situation.

25           THE COURT:  That we have here.  Okay.

1          MR. MCCUNE:  Your Honor, may I address --

2          THE COURT:  You will but give him his opportunity,

3     please.  All right.  Go ahead.

4          MR. WILSON:  I do want to touch on the second count as

5     well if the Court --  or you want --

6          THE COURT:  Second count seems to me to depend upon

7     how you interpret the first count as to what that language

8     means.  But go ahead.

9          MR. WILSON:  And I respectfully disagree with that.  I

10    know that's the conclusion that the Court in Gunter reached,

11    and I think I can explain why that's incorrect.

12          THE COURT:  Go ahead.

13          MR. WILSON:  The plaintiff claims that essentially we

14    didn't make the proper disclosure of our overdraft program as

15    is required under the Electronic Funds Transfer Act.  And that

16    act through Regulation E requires financial institutions to

17    make a disclosure about their overdraft program that is

18    substantially similar to Model Form A-9.  And the Regulation E,

19    Your Honor, is 12 C.F.R. 1005.17.  And so if you look at pages

20    11 through 13 of our reply brief which we filed in support of

21    the motion, we have actually given the Court a side-by-side

22    chart showing model disclosure that's required that's put out

23    by the CFPB, and then the disclosure that we used.  And they're

24    the same, Your Honor.  And that's important here because the

25    EFTA contains a Safe Harbor Provision.  It's in 15 U.S.C.

Section 1693m(d)(2). And I have a copy of the statute if the Court wants it.

But that Safe Harbor Provision specifically says that if the financial institution uses the model language, so in this case Model Form A-9 --

THE COURT: But is it talking about the statute? Because I do have the reg here in front of me. You're talking about the statute.

MR. WILSON: Yes, Your Honor.

THE COURT: Not the reg. I don't have the statute.

MR. WILSON: So on the statute, it contains the Safe Harbor Provision which says that a financial institution is immune from civil liability. And it's contained in the section of the statute that deals with civil liability.

So for Mr. McCune's client to have a claim here, he's got to proceed under the statute, and there's a specific Safe Harbor Provision which says that if the financial institution uses the model language, it's immune from all civil liability, including the kind of liability that's alleged here.

And, again, we use the model language, and so the statute says if you use the model language, you cannot be liable for civil penalties. And so I believe that, again, Section 1693m(d)(1) and (2) are dispositive of the second claim for violation of the Electronic Funds Transfer Act.

THE COURT: Okay. Good. Thank you very much.

1           MR. WILSON:  Thank you, Your Honor.

2           THE COURT:  You bet.  Okay.  Mr. McCune.

3           MR. MCCUNE:  Thank you, Your Honor.  If I could just

4 address a few of those points.

5           The first one starts out with counsel reading sections

6 in the agreement and reading them as when presented.  But if

7 you read the entire thing, each one of those provisions talks

8 about pay.  It's not -- so if he's implying that it's the time

9 of authorization that matters pursuant to the contract, that's

10 not what the contract says.

11           If you look in the section that talks about payment of

12 orders, it talks about the, whether there's sufficient funds or

13 sufficient money at the time of payment.  And that's true in

14 the payment of order of items or whether you look at the first

15 sentence on overdraft courtesy pay plan.  It references pay.

16 What it's clearly talking about is at the time of payment is

17 there enough money.  What's not before the Court here is as to

18 whether they could contract to say, if you don't have enough

19 available balance at the time we authorize, we can charge an

20 overdraft fee.  You know, if the contract -- maybe they can do

21 it.  But that's not what they contracted for.  They contracted

22 to say, if you don't have enough money in at the time of

23 payment, it's an overdraft.  So that's -- it's at the time of

24 posting or payment we have to look at.

25           And, again, if you take that and -- so I've provided

you an example, but counsel provided you an example too.  And
as I understand the example, there was a hundred dollars and
then a charge for a hundred dollars leaving zero, and then a
second charge for $50.  So then the question is why are there
two overdraft fees for that.  Because the issue here is that
results in two overdraft fees, not one.

We're not claiming that under the alternative or
hypothetical provided by counsel that they can't charge one
overdraft fee.  The question and the issue is they charged two
as a result of this.  And what we know is this program juices
up overdraft fees about 20 percent for credit unions that do
this.  So the issue talking about fairness and what we can and
cannot do, they can charge an overdraft fee under either of the
hypotheticals that we provided the Court.  The issue is by
using the available balance, they manage to get two overdraft
fees, even though one overdraft fee transaction was, put the
account in the negative.

So in one sense it's really double counting.

On the Wodja versus Washington case, counsel is --
I'm in that case, and counsel is incorrect.  The state --  I
would not be here in front of the Court in that case or this
case if the contract said we charge overdraft fees based on an
available balance.  That's not what the language said.

What the language in the Washington case was very
similar to the language here, and identical in the Reg E

1    portion of it and it talks about sufficient funds.  But what

2    every contract has, including Advia's, it has a section on

3    available funds.  So it uses the word available but available

4    funds is very different from available balance.  Available

5    funds is how quickly or how soon a deposit will clear.  If you

6    were to look at the contract it has a whole section on funds

7    availability process, and that's under Regulation C that has

8    nothing to do with available balance, despite the fact it uses

9    the word available.  Those are two different banking concepts.

10   So Washington did not use the term available balance.  There

11   was some discussion of available funds like there is in every

12   credit union contract but those are apples and oranges.

13          And then the other point I would like to make is we're

14   not just randomly picking one balance or another.  So we have

15   got two balances.  We are not just randomly picking one or the

16   other.  The available balance is appropriately used for

17   purposes of the credit union's decision making process.  So

18   they need to know how much is in the account, how much may be

19   coming into the account so they can decide whether to honor

20   checks, return checks, authorize debit cards, don't authorize.

21   All those are fine, appropriate.  The issue is taking that

22   balance, which is designed only for purposes of determining

23   whether to pay or return an item, whether to authorize or not

24   return an item, but then using it for purposes of a fee.  And

25   which results in, in increasing fees.  And the regulators,

through the Consumer Financial Protection Bureau in the winter
of 2015, which is the exhibit that we provided the Court, makes
very clear that if the bank or credit union is going to use
available balance, it better very, very clearly specify it's
using available balance and what it means.  And here Advia did
neither.  It didn't use the term available balance, doesn't use
it anywhere in the contract, it doesn't define it because it
can't because it didn't use it, but what it does do is talk
about money in the account or sufficient funds which is, if I
pulled out my wallet and you said how much money do I have in
my account, I'm going to count how much I have in there.  I'm
not going to say, I have $40 but, gee, I think I've got to go
to the store to get some milk, so how much money I have is, is
$30.  How much money I have in my wallet is how much money
is -- I open my wallet and I count it.

So for purposes of their use of the terminology -- and
remember this is a contract Advia drafted, they could have used
any language they wanted in the world, and what they chose is
to tell customers in a very misleading way that an overdraft is
when there is not enough money in the account or insufficient
funds.  So then when we are looking at which balance to use,
the ledger balance is the official balance of the account.  It
is the one that if today in this $10 example I gave you, every
day the credit union has to report to the regulators how much
money the customers have in their account.  And so they

accumulate it all together and they provide it to their
regulators. It's called a call report. That call report
doesn't use available balance. When they're reporting to the
regulators what's in the account, they use the ledger balance.
If you were to look at a statement, which we will if this case
is allowed to proceed, each of the statements has a balance on
it, just says balance. That balance is a ledger balance. The
account statement that the customers get each month has one
balance on it, and it's not available balance, it's ledger
balance because that's the official account balance.

And finally when you see balance scattered throughout
the agreement where they have to pay interest or they have to
do this or that, every one of those is ledger balance.

So the courts have said at the very least you have
ambiguous. I mean I certainly believe it's not ambiguous. I
think that if you're not going to clearly define it as
available balance, then the default is the official balance of
the account. But that's, that's an issue that can be decided
by a trier of fact down the line. But for purposes of the
motion to dismiss, at the very least by not using available
balance when that's what they're using, and it's been
criticized by other courts, it's been criticized by the
regulators, I think at the very best is an ambiguous clause.

As to the second point that was made to the Regulation
E, there is a specific requirement that here's the starting

1    point for the model form.  But what's clear from the

2    regulators' perspective in that supervisory highlight is

3    they're expecting the banks and credit unions to be using a

4    ledger balance.  And if they're not, they have to clearly

5    disclose it.  Well, if they have to clearly disclose it in

6    their account agreement, the Reg E form that is required

7    specifically for overdrafts, then they have to disclose it

8    there.  And by not disclosing it, it inaccurately describes the

9    overdraft program which is a violation of Reg E.

10             THE COURT:  Okay.  Thank you.

11             MR. WILSON:  I just want to make sure I'm hearing

12   things correct.  Because it sounded to me like Mr. McCune said

13   with regard to my hypothetical about the gas and groceries that

14   it's okay to charge an overdraft fee; using my hypothetical,

15   one overdraft fee when I go to the gas station and I buy the

16   $50 worth of gas after I already bought a hundred dollars worth

17   of groceries.  What --

18             THE COURT:  Now you said, you know, let's see if

19   you're putting words in his mouth.  I don't think you are.  But

20   Mr. McCune --

21             MR. MCCUNE:  No, Your Honor.  If you have two

22   transactions that together are greater than the ledger balance,

23   we are not disputing they can charge an overdraft fee.  But

24   only one of those two transactions, whichever one you want to

25   pick first, goes over the ledger balance.  So one overdraft fee

1    is one thing, but our complaint here is they charged two

2    overdraft fees in this scenario that I'm providing.

3              THE COURT:  What is the rule if you have two checks

4    each of them goes over the outstanding balance?  In other

5    words, one is for -- $100 balance, one is for 110, one is for

6    125, do you charge two overdraft fees then?

7              MR. MCCUNE:  If there are three checks?

8              THE COURT:  No, the balance a hundred dollars, first

9    check is 110, the second check is 125.

10             MR. MCCUNE:  Correct.  We have no dispute, that's two

11   overdraft fees.

12             THE COURT:  Two overdraft.

13             MR. MCCUNE:  Yes.

14             MR. WILSON:  What I want to make clear to the Court

15   again, and why I guess I'm confused is because this issue of us

16   charging two overdraft fees in the hypothetical I just

17   discussed is completely false and fabricated.  And if that's

18   what the substance of the claim is here, then at a minimum this

19   complaint needs to be amended because the example that we're

20   given in the complaint at paragraph 19 is not this notion that

21   the problem with what we're doing is that we are dinging them

22   both on the hundred charge and again on the $50 charge.  We

23   don't do that.  And so if that's what Mr. McCune is saying, I

24   would like him to plead that specifically so we can properly

25   respond to it.  But that's not what his complaint says.  His

1   complaint is alleging, again, I believe in line with my

2   hypothetical, that he's being charged one overdraft fee when

3   the transaction is initiated, and his complaint is that we

4   shouldn't be charging an overdraft fee until the transactions

5   all post.  And so if the problem as he sees it is that there's

6   multiple overdraft fees for one overdraft, then I think at a

7   minimum the Court needs to ask him to replead this complaint

8   because it's not what it says.

9           With regard to the second claim, the Electronic Funds

10  Transfer Act, I think it's significant that Mr. McCune didn't

11  feel the need to respond to the Safe Harbor Provision because

12  it's absolutely dispositive of this count.  And it's important

13  here, Your Honor, and I'll give you an example; in Wodja,

14  Mr. McCune's firm I think voluntarily dismissed their

15  Electronic Funds Transfer Act after counsel there brought up

16  the Safe Harbor Provision, and I believe that case was just

17  recently dismissed from federal court based upon a lack of

18  subject matter jurisdiction.

19          And so I think at a minimum based on the Safe Harbor

20  Provision, the EFTA claim has to go.  And I think if it is

21  dismissed then the next logical step is to determine whether

22  this Court still has subject matter jurisdiction.  I would

23  submit that it would not.

24          THE COURT:  Well, that's something I've considered,

25  not about the dismissal, but whether we had subject matter

jurisdiction, and of course you have it if you have the

violation of the Electronic Funds Transfer Act.  But I didn't

see five million dollars.  Maybe there is five million dollars

possible damages here.

MR. MCCUNE:  I am pretty sure we can meet that in this

case because of the size of Advia, Your Honor.

THE COURT:  Okay.

MR. MCCUNE:  The issue in the Washington case had to

do with under CAFA, where the consumers were located.  It had

nothing to do with the Safe Harbor Act.  It had nothing to do

with Reg E.  It had to do with where the consumers were

located.

MR. WILSON:  And I'll submit to the Court that the

same exact situation is going to arise in this case under CAFA

because we meet the threshold for membership.  I think it's

two-thirds of the members have to reside in the same state as

the defendant entity, and that's -- we are right on point.

And, again, I'm still not hearing --

THE COURT:  Try one case at a time.

MR. WILSON:  Fair enough.  I just, I think again, it's

important, there's --  the statute, and I can't emphasize it

enough, it's plain as day in my opinion that when you comply

with the model disclosure, you're immune from liability under

the act.

THE COURT:  All right.

1    MR. WILSON:  Thank you, Your Honor.

2    THE COURT:  Thank you.  Well, thanks, counsel.  You

3  wanted to say something again?  This has been very helpful to

4  me, frankly, and I appreciate you having come.  Oral argument,

5  a lot of judges don't give it anymore.  I tend to give it if

6  anyone wants it.  But I'm glad I did it in this case because I

7  learned something.  You helped clarify in my own mind where

8  we're going.

9    MR. MCCUNE:  Thank you, Your Honor.

10    THE COURT:  So thank you.  You're excused.

11    MR. WILSON:  Thank you, Your Honor.

12    THE CLERK:  All rise, please.

13    THE LAW CLERK:  All rise, please.  Court is adjourned.

14    (Proceedings concluded, 11:40 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Kathy J. Anderson

Kathy J. Anderson, RPR, FCRR

U.S. District Court Reporter

402 Federal Building

Grand Rapids, MI  49503